UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEDRON GASTON,

    Plaintiff,

    v.

JACKIE C. HAZELTINE, ROYAL PAPER
STOCK COMPANY, INC., GRANGE
MUTUAL CASUALTY COMPANY,

    Defendants.

Case No. 3:21-CV-896 JD

## OPINION AND ORDER

Now before the Court are Plaintiff Kedron Gaston's motion for partial summary judgment and her motion for sanctions. (DE 32; DE 51.) In Plaintiff's Complaint, she brought two separate claims: a claim for negligence against Royal Paper Stock Company, Inc. ("Royal Paper") and Jackie C. Hazeltine ("Mr. Hazeltine") and a claim for spoliation of evidence by Grange Mutual Casualty Company ("Grange"). (DE 9 at 3, 11.) Plaintiff now requests that, as a sanction for the alleged destruction of evidence, the Court either bar Defendants from raising certain affirmative defenses or enter a directed verdict/default judgment in Plaintiff's favor on liability. (DE 33 at 16; DE 51 at 10.) As explained further below, under Indiana law, the third-party claim against Grange for spoliation of evidence requires damage to the underlying lawsuit against Hazeltine and Royal Paper. Given this independent tort claim, the proper remedy for damage to the underlying suit is not for the Court to issue sanctions, but rather for a jury to

award damages on the independent claim for spoliation.[1] Accordingly, for that reason, and the reasons further explained below, the Court will deny both of Plaintiff's motions.

## A.     Factual Background

On a foggy day in 2015, Plaintiff Kedron Gaston (at the time, a twelve-year-old minor) was a passenger in a car which collided with a stopped semi-truck driven by Mr. Hazeltine and owned by his employer Royal Paper. Plaintiff alleges that, at the time of the crash, "the brake lights on the back of the Royal Paper semi-trailer . . . were not illuminated [or] activated . . . despite the fact that the brakes were engaged." (DE 9 ¶ 116.) Both Plaintiff and her mother, Jessica Gaston, suffered serious injuries.  (DE 11 ¶¶ 16, 61.)

When investigating the crash, Royal Paper and Mr. Hazeltine's insurer, Grange, hired Cooper Barrette Consulting and Adam Hyde to perform testing on the trailer lighting system of the semi-truck. (DE 35-3 at 18; DE 41 at 2 (explaining that Grange "retained attorney Jennifer Davis . . . to represent Mr. Hazeltine and Royal Paper's interests" and that Ms. Davis then retained Adam Hyde of Cooper Barrette Consulting.) Adam Hyde wrote after an initial inspection that he "found parts of the bulb unit were broken resting at the base of the unit [but that] no further examination was completed at that time of this report, *as further examination may be destructive in nature to the sealed unit.*" (DE 35-5 at 7 (emphasis added).) However, at the direction of the attorney hired by Grange, Jennifer Davis, Hyde then proceeded to conduct testing on the lights, without contacting Kedron Gaston, her representatives, or the Court beforehand. (DE 11 ¶ 135; DE 35-3 at 19l; DE 35-3 at 161.)

---

[1] In Plaintiff's Complaint, she seeks monetary damages "in an amount that will compensate her for damages sustained, for pre-judgment interest, punitive damages, the costs of this action, payment of reasonable expenses including attorney fees, and all other relief just and proper under the premises." (DE 9 at 19.)

On November 2, 2021, Plaintiff Kedron Gaston filed the instant lawsuit, bringing two claims: (1) negligence and negligent infliction of emotional distress against Mr. Hazeltine and Royal Paper, which alleges that the stopped truck did not have active taillights or brake lights at the time of the accident and there were no other mechanisms to alert approaching drivers of the truck's presence in the fog; and (2) spoliation of evidence against Grange, alleging that Mr. Hyde took the taillights and brake lights from the truck and performed destructive testing, thereby making crucial evidence unavailable. (DE 9 at 3, 11.)

On May 5, 2022, Plaintiff moved for partial summary judgment. In that motion, Plaintiff asserts that the findings of a prior state court litigation brought by her mother, Jessica Gaston, collaterally estops each of the Defendants from relitigating spoliation in the instant case. In that prior litigation, Jessica Gaston brought a suit concerning the crash in the Wabash County Superior Court: *Jessica Gaston v. Jackie Hazeltine and the Royal Paper, Inc.*, case number 85D01-1709-PL-000605. (DE 35-1; DE 35-2.) The state court made the following findings regarding spoliation:

> (1)　　That the evidence related to the tractor-trailer's lighting system was in the exclusive possession of the Defendants or their agents;
> (2)　　That the Defendants had a duty to preserve the evidence;
> (3)　　That the Defendants knew, or should have known, that Jessica Gaston was injured during the accident, and that litigation was likely as a result of that incident;
> (4)　　That the Defendants negligently or intentionally destroyed, mutilated, or altered the evidence as a result of invasive testing performed by their expert; and
> (5)　　That the aforementioned testing was performed without protecting the interests of Jessica Gaston by failing to contact the Court, Jessica Gaston, or her representative, and by failing to set up a procedure to ensure her interests were protected.

(DE 35-1 at 4.) The Court notes, however, that the only defendants in that prior litigation were Mr. Hazeltine and Royal Paper. (*Id.* at 1.) Meaning, Grange was not a defendant.

3

In her motion for partial summary judgment, Plaintiff requests that the Court collaterally estop each of the Defendants from relitigating the issue of spoliation and that the Court grant partial summary judgment relative to the Defendants' defenses alleging fault on Cheryl Koehler, Jessica Gaston, Kedron Gaston, and/or KS (the minor sister of Kedron). After filing her motion for partial summary judgment, Plaintiff filed a motion for sanctions. (DE 51.) This motion is also predicated on the destructive testing performed by Adam Hyde, but seeks relief in the form of issuing either a directed verdict or default judgment on liability and setting this case for a trial on damages.

Both motions have now been fully briefed and are ripe for review.

## B.    Standard of Review

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). There must be more than a mere scintilla of evidence in support of the opposing party's position and "inferences relying on mere speculation or

conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009); *Anderson*, 477 U.S. at 252. Instead, the opposing party must have "evidence on which the jury could reasonably find" in his or her favor. *Anderson*, 477 U.S. at 252.

**C.     Discussion**

There are several issues before the Court. The first issue is whether Ohio law or Indiana law applies to Plaintiff's spoliation claim against Grange. After deciding that issue, the Court examines whether Grange is estopped from relitigating certain findings issued by the Wabash County Superior Court as it relates to Count II. After determining whether Grange Insurance is collaterally estopped, the Court will separately analyze whether Royal Paper and Mr. Hazeltine are collaterally estopped from relitigating spoliation as it pertains to Plaintiff's request for sanctions. Finally, if the Court finds that Royal Paper and Mr. Hazeltine are collaterally estopped, the Court will determine whether sanctions should issue.

*(1) Choice of Law*

The Court first considers which state's law applies to Plaintiff's spoliation claim. Plaintiff argues that Indiana law applies, since this is where the underlying negligence litigation is occurring. Grange, on the other hand, argues that Ohio law applies, because the testing which destroyed the evidence took place in Ohio.

In determining which state's substantive law applies, the Court applies the choice-of-law principles of the forum state —in this case, Indiana. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law."). However, prior to "entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different

states." *Barron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992) (quoting *International Administrators, Inc. v. Life Ins. Co.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985)); *see also Mathis v. Metro Life Ins. Co.*, 12 F. 4th 658, 662 (7th Cir. 2021) ("The first step (or a pre-requisite to) Indiana's choice-of-law analysis is to determine whether there is an actual, material conflict of the laws.").

Plaintiff has alleged spoliation as an independent tort. Indiana is one of the few jurisdictions that recognizes spoliation as an independent tort, which "is analyzed either as a species of negligence or under the rubric of intentional interference with prospective or actual civil litigation." *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1032 (7th Cir. 2005); *see also Thompson ex rel. Thompson v. Owensby*, 704 N.E.2d 134, 140 (Ind. Ct. App. 1998) (affirming denial of motion to dismiss and allowing claim for negligent spoliation to proceed). Ohio also recognizes the independent tort of intentional spoliation of evidence. *Elliott-Thomas v. Smith*, 110 N.E.3d 1231, 1233 (Ohio 2018). However, while Ohio law supports intentional spoliation claims, it does not permit a spoliation claim based on mere negligence. *Drawl v. Cornicelli*, 706 N.E.2d 849, 852 (Ohio Ct. App. 1997) (explaining that "to establish her spoliation claim, appellant was required to demonstrate that appellee willfully destroyed, altered, or concealed evidence" and that "mere negligence or failure to conform to standards of practice" was not sufficient).

This constitutes an actual, material conflict. In Indiana, an actual, material conflict exists where the conflict is "important enough to affect the outcome of the litigation." *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). For example, in *Simon*, the Supreme Court of Indiana found that there was an actual, material conflict where there were "significant differences between the [the two states'] substantive laws [that] would apply to the trial[.]" *Id.* Like in

6

*Simon*, the differences between the substantive laws would have an effect on the substantive law applied at trial: under Indiana law, both negligent spoliation and intentional spoliation theories would be permitted, while, under Ohio law, only a claim of intentional spoliation would be permitted. Plaintiff has also not foreclosed proceeding on her negligent spoliation claim: her complaint simply alleges a general claim of "spoliation of evidence" without specifying whether she is proceeding under a theory of negligent spoliation or intentional spoliation (although it appears that she has alleged facts sufficient to support proceeding on either theory). Given that Plaintiff could proceed under both theories under Indiana law, but only one under Ohio law, this is a conflict important enough to affect the outcome of the litigation.

With the finding that an actual and material conflict exists, Indiana's choice-of-law rules then presumptively apply "the rule of *lex loci delicti* (the place of the wrong)." *Popovich v. Weingarten*, 779 F. Supp. 2d 891, 896 (N.D. Ind. 2011). Under this rule, the Court applies the substantive laws of the "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Simon*, 805 N.E.2d at 805. In order to determine the last event necessary for Grange to be liable, the Court must look to the elements of Plaintiff's spoliation claim. A defendant is liable in Indiana for negligent spoliation if a plaintiff shows that the "party alleged to have lost or suppressed the evidence owed a duty to the person bringing the spoliation claim to have preserved the material", "the duty was breached, that [Plaintiff was] harmed by the breach,' and that the harm resulted in damages that can be proven with reasonable specificity." *J.S. Sweet Co.*, 400 F.3d at 1032 (quoting *Owensby*, 704 N.E. 2d at 140)).

The parties dispute the last event necessary to make Grange liable. Grange argues that the "last event necessary" to make it liable occurred in Ohio because the acts which damaged the destructive testing occurred "at the Royal Paper lot located in Columbus, Ohio." (DE 41 at 10.)

Plaintiff argues that the "last event necessary" to make Grange liable took place in Indiana, because the damages caused by the spoliation were to the underlying litigation (i.e., the action for negligence against Mr. Hazeltine and Royal Paper). (DE 47 at 3.)

The Court agrees with Plaintiff. A spoliation claim in Indiana requires that damages be proven with "reasonable specificity." *J.S. Sweet Co.*, 400 F.3d at 1034. Multiple other district courts, applying Indiana law, have determined that without the underlying claim either pending or already litigated, damages would be too speculative to support an independent cause of action for spoliation. *See Dobrijevich v. Ford Motor Co*., No. 2:05-CV-241 PS, 2006 WL 8452670, at *2 (N.D. Ind. Oct. 19, 2006) (finding that because "there is no underlying claim . . . Plaintiffs are unable to prove [the required element] of damages" and so "summary judgment in favor of [the insurer] is also appropriate."); *see also Rackemann v. LISNR, Inc*., No. 117CV00624TWPMJD, 2018 WL 4693524, at *5 (S.D. Ind. May 21, 2018) (finding that the "injury in a spoliation claim is the negative impact of the destruction of evidence upon a litigant's ability to prevail on its lawsuit . . . in other words, the harm suffered . . . would be the negative impact upon this litigation, occurring in Indiana"). Furthermore, the Supreme Court of Indiana has cautioned about the speculative nature of third-party spoliation claims. *See Glotzbach v. Froman*, 854 N.E.2d 337, 338 (Ind. 2006) ("Proving damages in a third-party spoliation claim becomes highly speculative and involves a lawsuit in which the issue is the outcome of another hypothetical lawsuit."). Without having either simultaneous litigation of the spoliation claim alongside the underlying claim, or prior completed litigation of the underlying claim, awarding damages in such a circumstance would be extraordinarily speculative.

Accordingly, the Court finds that because some damage to this underlying litigation, occurring in Indiana, is necessary for Grange to be liable, the Court holds that the last place

8

necessary for liability is Indiana. Therefore, under the doctrine of *lex loci delicti*, Indiana law applies.

### (2) Offensive Collateral Estoppel as Applied to Grange in Count II

As mentioned above, a defendant is liable in Indiana for negligent spoliation if a plaintiff shows the "party alleged to have lost or suppressed the evidence owed a duty to the person bringing the spoliation claim to have preserved the material", "the duty was breached, that [Plaintiff was] harmed by the breach,' and that the harm resulted in damages that can be proven with reasonable specificity." *J.S. Sweet Co.*, 400 F.3d at 1034 (quoting *Owensby*, 704 N.E. 2d at 140)). In the prior litigation, the Wabash County Superior Court issued certain findings which addressed two of these elements, finding (1) that the evidence related to the tractor-trailer's lighting system was in the exclusive possession of Jackie C. Hazeltine and the Royal Paper Stock Company or their agents; (2) that Jackie C. Hazeltine and the Royal Paper Stock Company had a duty to preserve the evidence; (3) that Jackie C. Hazeltine and the Royal Paper Stock Company knew, or should have known, that Jessica Gaston was injured during the accident, and that litigation was likely as a result of that accident; (4) that Jackie C. Hazeltine and the Royal Paper Stock Company negligently or intentionally destroyed, mutilated, or altered the evidence as a result of invasive testing performed by their expert; and (5) that this testing was performed without protecting the interests of Jessica Gaston by failing to contact the Court, Jessica Gaston, or her representative, and by failing to set up a procedure to ensure her interests were protected.[2] (DE 35-1 at 4.) While the Wabash County Superior Court issued findings related to duty and

---

[2] The Court notes that the prior order by the Wabash County Superior Court pertained to "the Defendants." (DE 35-1 at 4.) However, the only defendants in that prior action were Mr. Hazeltine and Royal Paper. Accordingly, the Court indicates above that the Wabash County Superior Court's order only applied to those two defendants.

breach of duty, none of the above findings addressed causation or damages. Meaning it never determined that the destruction of evidence damaged the ability of Jessica Gaston to bring her lawsuit. The issue in front of this Court, therefore, is whether the Wabash County Superior Court's findings regarding duty and breach of duty preclude those issues from being relitigated as to the spoliation claim in Count II.

The preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law. *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 856 (7th Cir. 2002). Here, the Court looks to Indiana law in order to determine the effect of the prior judgment. *In re Luedtke*, 429 B.R. 241, 250 (Bankr. N.D. Ind. 2010) ("The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment."). In Indiana, issue preclusion, or collateral estoppel, bars the subsequent litigation of a fact or issue that was necessarily decided in a prior lawsuit if the same fact or issue is also presented in the subsequent lawsuit. *Bartle v. Health Quest Realty VII*, 768 N.E.2d 912, 917 (Ind. Ct. App. 2002). The former adjudication will be conclusive only as to those issues which were actually litigated and determined in the prior suit. *MicroVote Gen. Corp. v. Indiana Election Comm'n*, 924 N.E.2d 184, 197 (Ind. Ct. App. 2010).

Collateral estoppel comes in two forms: "offensive" collateral estoppel and "defensive" collateral estoppel. *Eichenberger v. Eichenberger*, 743 N.E.2d 370, 374 (Ind. Ct. App. 2001). "Offensive collateral estoppel involves a situation where the plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party." *Id.* at 375. Indiana courts apply a two-part rule when deciding whether to apply offensive collateral estoppel: (1) ask whether "the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue"; and (2) "whether it would

be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Sullivan v. Am. Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 138 (Ind. 1992); *Eichenberger,* 743 N.E.2d at 375. Collateral estoppel also requires (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of issues; and (3) the party to be estopped was a party or the privy of a party in the prior litigation. *Reising v. Guardianship of Reising*, 852 N.E.2d 644, 649 (Ind. Ct. App. 2006).

Grange is not barred from relitigating the issues of duty and breach of duty because Plaintiff cannot show that those two issues were necessarily decided in the previous litigation. "Issue preclusion bars the subsequent relitigation of the same fact or issue where that fact or issue was *necessarily* adjudicated in a former suit and the same fact or issue is presented in a subsequent action." *Wagle v. Henry*, 679 N.E.2d 1002, 1005 (Ind. Ct. App. 1997). "The [same issue] requirement is not met, however, if the issue is one that was not actually litigated and determined but only one that *might* have been litigated and determined." *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 706 (Ind. 2012).

Here, the same issue requirement is not met as to Grange. The Wabash County Superior Court only issued findings as to the "the defendants" and the only two defendants in the prior litigation were Mr. Hazeltine and Royal Paper. (DE 35-2 (finding that "The *Defendants* had a duty to preserve the evidence" and that "the *Defendants* knew, or should have known, that Jessica Gaston was injured during the accident, and that litigation was likely as a result of that accident"). But these findings by the Wabash County Superior Court do not mention Grange at all. The court's decision to not base its sanctions on third-party conduct makes sense. After all, the Supreme Court of Indiana has indicated that sanctioning a first party for the conduct of a third party would likely be impermissible. *See Glotzbach v. Froman*, 854 N.E.2d 337, 341 (Ind.

2006) (explaining that "evidentiary inferences are not available as a remedy for or deterrent to third-party spoliation" but that criminal sanctions, sanctions under the Indiana Rules of Professional Conduct if the attorneys for the third party were involved, and contempt sanctions were all available to the trial court to deter third-party spoliation where Plaintiffs could not pursue claim); *see also Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 355 (Ind. 2005) (explaining that because non-parties "to [a] litigation" were not "subject to existing remedies and deterrence" there may be situations where "fairness and integrity of outcome and the deterrence of evidence destruction may require an additional tort remedy when evidence is destroyed or impaired by persons that are not parties to litigation"); *Shirey v. Flenar*, 89 N.E.3d 1102, 1107 (Ind. Ct. App. 2017) (explaining that, after "recognizing that [potent discovery sanctions and an inference that the spoliated evidence was unfavorable to the party responsible] are generally unavailable against a spoliator who is not a party to the underlying dispute, the [Supreme Court of Indiana in *Gribben*] explicitly left the door open to claims of 'third-party' spoliation.").

Because Plaintiff has not demonstrated that the Wabash County Superior Court found that Grange had a duty to protect the evidence and that Grange breached this duty (which are the issues presented in this action), the Court finds that Grange is not prohibited from relitigating Count II.

### *(3) Offensive Collateral Estoppel as to Mr. Hazeltine and Royal Paper*

The Court next addresses whether Hazeltine and Royal Paper are estopped from relitigating spoliation. The Court notes that, as to these defendants, rather than spoliation being brought as an independent tort, Plaintiff now requests a sanction. Spoliation, when brought as a sanction, describes a "particular discovery abuse that involves the intentional or negligent destruction, mutilation, alteration, or concealment of physical evidence." *N. Indiana Pub. Serv.*

*Co. v. Aqua Env't Container Corp.*, 102 N.E.3d 290, 300 (Ind. Ct. App. 2018). Because the "pre-suit duty to preserve material is substantive," rather than procedural, Indiana state law applies when determining if the spoliation is sanctionable and any remedy. *Thomas v. Bombardier-Rotax Motorenfabrik, GmbH*, 869 F. Supp. 551, 553 (N.D. Ill. 1994) (finding that because the preservation of material evidence was a substantive matter, state law applied when ruling on the motion to bar evidence). In Indiana, in order to establish spoliation as a discovery sanction, the party claiming spoliation must prove "(1) there was a duty to preserve the evidence and (2) the alleged spoliator either negligently or intentionally destroyed, mutilated, altered, or concealed the evidence." *Aqua Env't Container Corp.*, 102 N.E.3d at 301.

The Court again looks to Indiana's law of collateral estoppel, which applies a two-part rule when deciding whether a party is precluded from relitigating an issue: (1) ask whether "the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue"; and (2) "whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Sullivan*., 605 N.E.2d at 138; *Eichenberger*, 743 N.E.2d at 375. Collateral estoppel also requires (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of issues; and (3) the party to be estopped was a party or the privy of a party in the prior litigation. *Reising*, 852 N.E.2d at 649.

Unlike with Grange, the issues presented here are the same as the issues presented in the prior litigation. Even though the Wabash County Superior Court findings did not address Grange, it did make explicit findings as to Mr. Hazeltine and Royal Paper, concluding that they (1) had "exclusive possession" of "evidence related to the tractor-trailer's lighting system," (2) had a "duty to preserve the evidence," (3) "knew, or should have known, that Jessica Gaston was injured during the accident, and that litigation was likely as a result of that accident," and (4)

"negligently or intentionally destroyed, mutilated, or altered the evidence as a result of invasive testing performed by their expert." (DE 35-1 at 4.) These findings address both elements required to prove spoliation as a discovery sanction: duty and breach of duty. Accordingly, the issues that were previously litigated by the Wabash County Superior Court are the same as the issues presently before the Court for the purposes of sanctioning Mr. Hazeltine and Royal Paper.

The Court also finds that there was a valid final judgment on the merits and that the doctrine of issue preclusion may apply to the interlocutory order. In Indiana, "a dismissal with prejudice constitutes a dismissal on the merits and is therefore conclusive of the rights of the parties and res judicata as to the questions that might have been litigated." *Staff Source, LLC v. Wallace*, 143 N.E.3d 996, 1010 (Ind. Ct. App. 2020) (citations and quotation marks omitted). Furthermore, Indiana law is clear that "non-appealable interlocutory rulings merge into the final judgment." *Matter of Adoption of A.E.*, 191 N.E.3d 952, 956 (Ind. Ct. App. 2022). Here, the question of spoliation was previously litigated and the trial court issued its findings in an interlocutory order. (DE 35-1.) Once a dismissal with prejudice occurred, this interlocutory order merged into the final judgment and a party could be collaterally estopped from relitigating that issue, so long as the other elements of offensive collateral estoppel were satisfied.

Cases from other jurisdictions help explain why policy reasons counsel in favor of applying the doctrine of collateral estoppel to interlocutory judgments after settlement and dismissal with prejudice. For example, in *Siemens Med. Sys., Inc. v. Nuclear Cardiology Sys., Inc.*, 945 F. Supp. 1421, 1435 (D. Colo. 1996), the court held that where a court "entered a partial summary judgment against a party on an entire claim and the losing party chooses to settle rather than secure an appeal, that party will face subsequent application of the doctrine of issue preclusion." The court reasoned that:

> If a partial summary judgment is never to have preclusive effect, a party involved in a series of suits against different litigants will have the option to avoid preclusive effects in future suits simply by settling the current suits whenever an unfavorable summary judgment order is issued. This would be directly contrary to the goal of judicial economy that collateral estoppel is designed to promote. . . So long as it would not be inequitable to do so, it makes inimitable sense to preserve and use whatever firm judicial decisions have been made previously on a particular issue.

*Id.* Courts in multiple other jurisdictions have come to the same conclusion regarding issue preclusion as applied to interlocutory orders. *See Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 853 (Ill. 2001) ("Collateral estoppel may apply to determinations made prior to the entry of a settlement agreement disposing of the underlying litigation."); *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1472 (Fed. Cir. 1989) ("Where rulings made after a full and fair opportunity to litigate are firm and consistent with the subsequent settlement agreement by the parties and the judgment actually entered in the case, issue preclusion has been applied as to those issues when raised in a subsequent suit."); *TM Pats., L.P. v. Int'l Bus. Machines Corp.*, 72 F. Supp. 2d 370, 378 (S.D.N.Y. 1999) (explaining that rulings issued before a settlement "remain preclusive" because a "party who cuts off his right to review by settling a disputed matter cannot complain that the question was never reviewed on appeal").

The Court next addresses whether Mr. Hazeltine and Royal Paper had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. In *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1038–39 (Ind. 1993), the Supreme Court of Indiana laid out a non-exhaustive list of the factors a court should consider when determining if there was a full and fair opportunity to litigate:

> The trial court may consider privity, the defendant's incentive to litigate the prior action, the defendant's ability to defend the prior action, and the ability of the plaintiff to have joined the prior action. When considering the defendant's incentive to litigate, the trial court may consider the interest at stake for the defendant as well

as how the defendant perceived this interest. For example, did the defendant have its most experienced litigator in the prior action or, instead, did the defendant rely on a less experienced litigator? Similarly, the trial court may consider whether the forum in which the action was defended allowed the defendant to participate in the full range of discovery. For example, was the forum inconvenient thus preventing the defendant from presenting witnesses or from taking depositions

The Court finds that Mr. Hazeltine and Royal Paper each had a full and fair opportunity to litigate the prior case. The Court notes at the outset that Mr. Hazeltine and Royal Paper fail to raise arguments as to multiple of these factors, including their ability to defend the prior action and their incentive to defend the prior action. Accordingly, the Court deems those arguments waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ."). Even if they had made such arguments, they would not be meritorious. First, Mr. Hazeltine and Royal Paper both had an opportunity to litigate the prior case. Both Royal Paper and Mr. Hazeltine were named as defendants and actively participated in the prior litigation, as shown by the Wabash County Superior Court's docket. (DE 35-2.) Not only was there an opportunity to litigate, but both defendants also had an incentive to vigorously litigate the prior case. The prior litigation involved the exact same crash, where the injuries were apparently severe enough to have caused the plaintiff in that case, Jessica Gaston, to ultimately require an appointed guardian. (DE 51-10). There was also strong reason to expect future litigation: the parties knew, or should have known, that there were minors involved in the crash who, due to their age, were legally disabled from bringing a suit until they reached the age of 18 or until their guardian decided to bring a suit on their own behalf. *See Barton-Malow Co. v. Wilburn*, 556 N.E.2d 324, 326 (Ind. 1990) ("A person under legal disabilities may, through an appointed guardian, bring an action at any time during the legal disability or within two years after the disability is removed."). Given that they did not file suit alongside their mother, Mr. Hazeltine and Royal Paper should have

anticipated that such a suit was likely once the minors had their legal disability removed. Furthermore, both Royal Paper and Mr. Hazeltine had the exact same representation in the instant case as they did in the prior case, which indicates that they likely viewed the stakes of the litigation similarly. (DE 35-2.) Finally, the issue of spoliation in that prior case appears to have, in fact, been vigorously litigated by Mr. Hazeltine and Royal Paper. The docket indicates that multiple rounds of briefing specifically addressed the issue of spoliation, and that a hearing was held, prior to the Wabash County Superior Court's order being issued. (DE 35-2 at 7–15.)

Royal Paper and Mr. Hazeltine's sole argument as to fairness appears to be that Plaintiff "could have easily" joined in the prior litigation, but instead voluntarily took the "wait and see" approach in order to benefit from the discovery sanction issued. (DE 36 at 5.) The Court disagrees. Jessica Gaston's lawsuit was filed on September 20, 2017. (DE 35-2 at 3.) Kedron Gaston's date of birth is August 12, 2003. (DE 11 ¶ 2; DE 12 ¶ 2.) Meaning, at the time of the prior litigation, she was still a 14-year-old minor. In Indiana, a "person is considered 'under legal disabilities' if that person is less than eighteen years of age" and if a cause of action accrues prior to her eighteenth birthday, that person "may bring the action within two (2) years after" she turns eighteen. *LaCava v. LaCava*, 907 N.E.2d 154, 162 (Ind. Ct. App. 2009). Theoretically, Plaintiff's appointed guardian could have brought suit on her behalf before she was 18. *See Barton-Malow Co. v. Wilburn*, 556 N.E.2d 324, 326 (Ind. 1990) ("A person under legal disabilities may, *through an appointed guardian*, bring an action at any time during the legal disability or within two years after the disability is removed."). However, rather than demonstrating that Plaintiff could have *easily* joined the litigation, the hurdle of requiring a guardian to bring a lawsuit shows that Plaintiff, then only 14, instead indicates that it would have been quite difficult for the

Plaintiff to file an action, since this would have required the consent and action of a separate party.

For the above reasons, the Court finds that the issue of spoliation as to Mr. Hazeltine and Royal Paper has been fully and fairly litigated. Accordingly, because the issue of spoliation has been fully and fairly litigated by the Defendants in the Wabash County Superior Court, the Court finds that the issue of spoliation may not be relitigated by Mr. Hazeltine and Royal Paper and that the findings of the Wabash County Superior Court regarding spoliation apply to this litigation.

### (4) Sanctions as to Mr. Hazeltine and Royal Paper

With the collateral estoppel issues resolved, the Plaintiff next asks the Court to sanction Mr. Hazeltine and Royal Paper for the spoliation. After a spoliation finding, the court may issue a sanction based on the "broad discretionary powers to issue evidentiary rulings to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *In re Bridgestone/Firestone, Inc.*, 287 F. Supp. 2d 938, 940 (S.D. Ind. 2003) (citation and quotation marks omitted). "However, a finding of spoliation alone does not necessarily require the imposition of sanctions." *Aqua Env't Container Corp.*, 102 N.E.3d at 302. Rather than automatically awarding sanctions upon a finding of spoliation, "[w]hen deciding whether to sanction a party for the spoliation of evidence, courts consider two primary factors: (1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party." *Id.* at 303.

After considering both factors, the Court finds that sanctions are not warranted in this circumstance. As to the first factor, even though the Wabash County Superior Court found that Mr. Hazeltine and Royal Paper spoliated evidence, and the Court respects that finding, the Court

does not believe it proper to issue sanctions where it is unclear to the Court the conduct for which Mr. Hazeltine and Royal Paper were sanctioned. In their statement of material facts, the Plaintiff repeatedly indicate that it was Grange, not Mr. Hazeltine and Royal Paper, which spoliated the evidence, writing: (1) "Adam Hyde was hired *by Grange Insurance* and worked at the direction of Grange Insurance and/or Jennifer Davis (counsel for Defendants hired by Grange Insurance) for the benefit of Grange Insurance and RPS" and (2) that "*Grange Insurance* did not notify Jessica Gaston, Kedron Gaston, any of their legal relatives, or the Court prior to the invasive and destructive testing." (DE 34 ¶¶ 7, 8.) Plaintiff's Complaint also alleges that it was Grange who hired Cooper Barrette, that it was Grange who paid their invoices, and that it was Grange who requested and directed them to destroy the evidence. (DE 9 ¶¶ 80–82.) Furthermore, the Plaintiff fails to include any of the briefs leading up to the lower court's decision to sanction Mr. Hazeltine and Royal Paper. Without anything in the record indicating why the lower court issued sanctions, the Court cannot ascertain why Royal Paper and Mr. Hazeltine are culpable for this spoliation, as opposed to Grange. Furthermore, as described above, the Supreme Court of Indiana has indicated multiple times that sanctioning a first party for the conduct of a third party would be impermissible. *See Glotzbach*, 854 N.E.2d 337, 341 (explaining that "evidentiary inferences are not available as a remedy for or deterrent to third-party spoliation" but that criminal sanctions, sanctions under the Indiana Rules of Professional Conduct if the attorneys for the third party were involved, and contempt sanctions were all available to the trial court to deter third-party spoliation where Plaintiffs could not pursue claim); *see also supra* pp. 11–12 (describing multiple cases indicating that first parties may not typically be sanctioned for the conduct of third parties). Plaintiff has failed to provide the Court with any argument or case law supporting the propriety of issuing sanctions against Mr. Hazeltine and

Royal Paper for Grange's conduct. Therefore, any argument in that regard is waived. *Berkowitz*, 927 F.2d at 1384 ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .")

Second, given that there is an independent tort claim for the spoliation of evidence brought against Grange, it would be illogical to sanction Mr. Hazeltine and Royal Paper unless they spoliated evidence other than the evidence spoliated by Grange. The independent claim for spoliation brought against Grange is predicated on there being some type of harm to the underlying negligence action against Royal Paper and Mr. Hazeltine. For example, in *Thompson ex rel. Thompson v. Owensby*, the Court of Appeals of Indiana indicated that the party bringing the spoliation claim could prove damages by showing either "damages [based] on their prospective inability to prove their claims against the other defendants [or damages] based on the cost of retaining experts or conducting discovery needed to provide alternative proof of the alleged defect[.]"*Owensby*, 704 N.E.2d at 140. Other courts have allowed juries to award damages on a spoliation claim for the "lost value of [a] personal injury claim." *Callahan v. Stanley Works*, 703 A.2d 1014, 1020 (N.J. Super. Ct. Law Div. 1997).

If the Court were to issue its own sanctions mitigating the damage attributable to Grange's conduct, then the suit against Grange not only appears superfluous (because the sanctions, theoretically, reduce the amount of damages available on the second claim), but perhaps leaves open the door to allowing a double recovery. The concern about plaintiffs "having their cake and eating it too" by getting both sanctions and the ability to pursue an independent tort appears to be the reason that the *Owensby* court wrote the following:

> Indiana courts, in resolving cases outside of the insurance context, have dealt with the issue [of remedying the failure to maintain evidence] by imposing an evidentiary inference against the party that lost the evidence. . . Courts in other jurisdictions have addressed the issue by imposing discovery sanctions. . .  In the

> present case, however, the Thompsons *have chosen* to pursue a tort *rather* than
> seeking a discovery sanction or availing themselves of an evidentiary inference.

*Owensby*, 704 N.E.2d at 140. In other words, by opting to pursue the tort claim, the plaintiff in

*Owensby* could no longer pursue a sanction.[3] While the present case presents a slightly different

factual set up than *Owensby*, in that the cases are being brought simultaneously, the underlying

rationale that a court cannot sanction a party for conduct that also serves as the basis of an

independent claim still applies. In such a circumstance, there is no prejudice by refusing

sanctions since Plaintiff's independent spoliation claim, if successful, would provide them a

remedy for the damage to their underlying lawsuit. (DE 9 at 19 (indicating that Plaintiff is

seeking monetary damages against Grange "in an amount that will reasonably compensate her

for damages sustained, for pre-judgment interest, punitive damages, the costs of this action, [and]

payment of reasonable expenses including attorney fees").)

Accordingly, because the culpability of Mr. Hazeltine and Royal Paper seems relatively

low, while the actual prejudice to Plaintiff from refusing a sanction is non-apparent, the Court

finds that a sanction is not warranted.

---

[3] The Court notes that the decision in *Owensby* came prior to the Supreme Court of Indiana's decisions in *Glotzbach* and *Gribben*, which both indicate that seeking sanctions based on third-party conduct is generally not permitted. See *Glotzbach*, 854 N.E.2d at 341; *Gribben*, 824 N.E.2d at 355. Accordingly, the choice presented in *Owensby* has likely morphed into a requirement in the general case where third-party spoliation occurs.

**D.      Conclusion**

For the reasons explained above, the Court DENIES the motion for partial summary judgment. (DE 32.) The Court also DENIES the motion for sanctions. (DE 51.) Finally, the Court DENIES as moot the motion for a hearing. (DE 43.)

SO ORDERED.

ENTERED: January 24, 2023

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court