UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEDRON GASTON,<br><br>Plaintiff,<br><br>v.<br><br>JACKIE C. HAZELTINE,<br>ROYAL PAPER STOCK CO., INC., and<br>GRANGE MUTUAL CASUALTY CO.,<br><br>Defendants. | CASE NO. 3:21-CV-896-JD-MGG |

**OPINION AND ORDER**

Pending and ripe before the Court is a Motion to Compel filed by Plaintiff, Kedron Gaston ("Kedron"), on December 27, 2022. [DE 62]. The motion seeks complete discovery answers and response to the interrogatories and requests for production Kedron served on Defendant Grange Mutual Casualty Company ("Grange Insurance"). Specifically, Kedron is asking the Court to compel the following items: (1) responses to Interrogatory No. 11; (2) correspondence between Attorneys Jennifer Davis / Thad Kelley / Bill Kelley and representatives of Grange Insurance; (3) correspondence from the insurer to the insured; and (4) response to Interrogatory No. 3 and Request for Production No. 11 to the extent that the responses relate to the spoliation of evidence. Since the motion was filed, the parties participated in a video motion hearing on September 8, 2023, where they presented oral arguments to augment their briefings of

1

the Motion to Compel. [DE 63, 65, 66]. As discussed below, Kedron's Motion to Compel is granted in part and denied in part.

## I. RELEVANT BACKGROUND

This cause of action arises from a motor vehicle accident that occurred on November 24, 2015. Plaintiff Kedron Gaston was a passenger in a car that collided with a stopped semi-truck operated by Jackie Hazeltine ("Hazeltine") and owned by his employer Royal Paper Stock Company, Inc. ("RPS"). Kedron and her mother, Jessica Gaston, were injured during the crash. The driver of their car, Kedron's aunt, was decapitated. Due to her injuries, Jessica Gaston could not care for Kedron, causing Kedron to move into foster care.

RPS's and Hazeltine's insurer, Grange Insurance, retained attorney Jennifer Davis to represent RPS's and Hazeltine's interests. During the investigation of the crash, Attorney Davis, on behalf of Grange Insurance, hired Cooper Barrette Consulting and Adam Hyde ("Hyde") to perform testing on the trailer's rear lighting system ("lighting system") of the semi-truck. After his initial inspection, Hyde submitted his Traffic Crash Investigation Report dated March 1, 2016. In discussing his inspection of the rear lighting system, Hyde said that he "found parts of the bulb unit were broken resting at the base of the unit [but that] no further examination was completed at that time . . . as further examination may be destructive in nature to the sealed unit." [DE 63-7 at 12]. At Attorney Davis's direction, however, Hyde conducted additional testing on the lights, without contacting Kedron, her representatives, or the Court beforehand. Kedron asserts the latter inspection affected the condition of the brake light evidence. According

to Kedron's expert Paul Thogersen, Hyde failed to properly preserve the condition of the brake lights during this examination. In particular, Mr. Thogersen found that "the condition of the lighting connectors" was not preserved and that "[d]irt and dust deposits on the lamp housing were removed which removes and alters evidence of the connections to the lamps." [DE 81-5 ¶ 6].

On November 2, 2021, Kedron filed this lawsuit, bringing two claims: (1) negligence and negligent infliction of emotional distress against Hazeltine and RPS, which alleges that the stopped truck did not have active taillights or brake lights at the time of the crash and that there were no other mechanisms to alert approaching drivers of the truck's presence in the fog; and (2) spoliation of evidence against Grange Insurance, alleging that Hyde took the taillights and brake lights from the truck and performed destructive testing, thereby making crucial evidence unavailable.

On May 5, 2022, Kedron moved for partial summary judgment on her spoliation claim against Grange Insurance, which the Court denied on January 24, 2023. Then, on February 2, 2023, Kedron filed a second motion for partial summary judgment on the duty and breach of duty elements of her spoliation claim against Grange Insurance. The Court granted the motion on May 4, 2023, finding that Grange Insurance had a duty to exercise reasonable care to preserve the lighting system while denying the motion as to the element of breach of duty.

In discovery, Kedron propounded interrogatories and requests for production on Grange Insurance seeking information on the handling of the investigation following the accident, and the preservation and inspection of evidence. Grange Insurance

withheld information to some of Kedron's written discovery requests asserting objections grounded in attorney-client privilege, insured-insurer privilege, and the work-product doctrine. Kedron's instant Motion to Compel arises from the parties' inability to resolve their dispute over Grange Insurance's objections.

II.    **ANALYSIS**

Information is discoverable if it is nonprivileged, relevant to any claim or defense in the case, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). "The party resisting such a motion bears the burden to show why a particular discovery request is improper" and must do so with specificity. *See Hills v. AT&T Mobility Servs., LLC*, 3:17-CV-556-JD-MGG, 2021 WL 3088629, at *4 (N.D. Ind. July 22, 2021). "When the party resists on the basis of privilege, that party must demonstrate both that the privilege applies and that it has not been waived." *E.F. Transit, Inc. v. Ind. Alcohol & Tobacco Comm'n*, No. 1:13-cv-01927-WTL-MJD, 2015 WL 1013475, at *2 (S.D. Ind. Mar. 9, 2015) (citations omitted). In the case of overly broad discovery requests or less than apparent relevancy, "the requesting party must establish relevancy." *Vajner v. City of Lake Station, Ind.*, No. 2:09-cv-245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010).

This Court has broad discretion in deciding whether to compel discovery and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *Satter v. Motorola, Inc.*, 138 F.3d 1164,

4

1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th Cir. 1996). As such, the court "independently determine[s] the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

### A. Interrogatory No. 11

Kedron challenges Grange Insurance's objection to Interrogatory No. 11., which asks if Grange Insurance alleges that any of RPS's or Hazeltine's responses to deposition questions and interrogatories in Kedron's mother's parallel case in Wabash Superior Court, *Jessica Gaston v. Hazeltine, et al.* (Cause No. 85D01-1709-PL-605) ("the Jessica Gaston Case") "were inaccurate and/or should not be relied by [Kedron] in this case . . . ." [DE 63-3 at 6]. According to Kedron, the information requested in Interrogatory No. 11 is discoverable under Fed. R. Civ. P. 26(b)(1) because it is nonprivileged, relevant to a claim or defense in the case, and proportional to the needs of the case. However, Grange Insurance objected to Interrogatory No. 11 based on relevance, form, mental impression, attorney-client privilege, and work-product doctrine. Kedron argues that Grange's objection is a blanket claim of privilege that is "not favored" by Indiana courts. *See Howard v. Dravet*, 813 N.E.2d 1217, 1221 (Ind. Ct. App. 2004).

In a civil case, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Here, the law of Indiana provides the rule of decision as already determined by this Court therefore the

privilege law of Indiana governs.[1] [DE 77 at 9]. When deciding whether a privilege applies to particular information, "the trial court must review the contested material and determine whether the claim is justified or mistaken and whether production of the requested documents should be barred or compelled." *Howard*, 813 N.E.2d at 1221 (quoting *Canfield v. Sandock*, 563 N.E.2d 526, 531 (Ind. 1990)). When a responding party fails to give the requesting party sufficient specificity from which to discern why the responsive information is being withheld, the responding party has asserted an improper claim of blanket privilege. *Hartford Fin. Serv. Grp., Inc. v. Lake Cnty. Park & Recreation Bd.*, 717 N.E.2d 1232, 1237 (Ind. Ct. App. 1999). In *Hartford Financial*, the court held that the defendant did not assert a blanket claim of privilege because it identified "the date, author, recipients, and the type of document and privilege asserted for each [withheld document]." *Id.* Thus, the content of the privilege log produced by the responding party is central to any determination of whether an improper blanket claim of privilege has been asserted.

Grange Insurance's Amended Privilege Log includes descriptions of each privileged document, the date, and the type of privilege asserted. [DE 63-4]. Like the privilege log in *Hartford Financial*, Grange's Amended Privilege Log is thorough and provides enough information from which Kedron can assess the grounds on which Grange Insurance has withheld requested information and whether the claims of

---

[1] The parties raised their dispute over whether Ohio law or Indiana law governs in briefing the instant motion to compel. In fact, the Court previously resolved the conflicts of law question [DE 77 at 9]; thus, no further analysis is required.

6

privilege are justified or mistaken. Therefore, Grange Insurance's objections to Interrogatory No. 11 do not rise to an improper blanket claim of privilege.

Still, the information Kedron requests through Interrogatory No.11 is protectable as work-product. "[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative [unless] they are otherwise discoverable under Rule 26(b)(1); and the [requesting] party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). The work-product doctrine serves the purpose of protecting an attorney's thought processes and mental impressions against disclosure. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010). "[The court] must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). The Indiana Court of Appeals held such work product, also referred to as opinion work product, "enjoys a nearly absolute immunity and only in rare situations can it be discovered." *Barr v. United Farm Bureau Mut. Ins. Co.*, 560 N.E.2d 1250, 1256 (Ind. Ct. App. 1990) (citation omitted).

Kedron asks if Grange and its attorneys "allege" that any of the responses given by its insureds—Hazeltine and RPS—in the Jessica Gaston Case are "inaccurate and/or should not be relied upon" by Kedron and her counsel in this action. [DE 63-3]. The way Kedron phrases Interrogatory No. 11 suggests she is looking to know the opinions of Grange Insurance and its attorneys about Hazeltine's and RPS's previous testimony.

7

To answer the interrogatory as written, Grange Insurance and its attorneys would have to make a judgment about the accuracy of the prior testimony and how it would be used in Kedron's instant case. Such judgments qualify as opinions and mental impressions of Grange's counsel, which are explicitly protected from disclosure under the work-product doctrine. Thus, Kedron's motion to compel Grange Insurance to respond to Interrogatory No. 11 is denied as to attorney work product, mental impressions, and opinions.

That said, facts are not protected under the work-product doctrine. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation, [and] either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). As a result, the factual and legal bases for claims and defenses sought through contention interrogatories, like Kedron's Interrogatory No. 11, must usually be produced so long as the requests are not abusive. *See Amax Coal Co. v. Adams*, 597 N.E.2d 350, 353-54 (Ind. Ct. App. 1992). Grange Insurance is thus reminded to include any factual statements responsive to Interrogatory No. 11, to the extent that they have not yet been produced, in their supplemental discovery responses produced pursuant to Fed. R. Civ. P. 26(e) and this Court's Rule 16(b) Scheduling Order [DE 18] through trial.

### B. Correspondence between Attorneys Jennifer Davis / Thad Kelley / Bill Kelley and Representatives of Grange Insurance

Kedron also challenges Grange Insurance's withholding of correspondence between its representatives and Attorneys Jennifer Davis, Thad Kelley, and Bill Kelley

("the RPS/Hazeltine Attorneys") who Grange hired to represent its insureds, Hazeltine and RPS. Grange Insurance asserts that the requested correspondence is protected from disclosure by the attorney-client privilege.[2] The attorney-client privilege "applies to all communications between the client and his attorney for the purpose of obtaining legal advice or aid, regarding the client's rights and liabilities." *Groth v. Pence*, 67 N.E.3d 1104, 1118 (Ind. Ct. App. 2017) (quoting *Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721, 724 (Ind. Ct. App. 1995)). To assert the attorney-client privilege, the party must prove "1) the existence of an attorney-client relationship and 2) that a confidential communication was involved." *Brown v. Katz*, 868 N.E2d 1159, 1166 (Ind. Ct. App. 2007).

Kedron argues that the attorney-client privilege no longer applies to the requested correspondence because Grange Insurance and RPS/Hazeltine now have adverse interests regarding the outcome of this case. Moreover, Kedron argues that certain categories of documents, as identified on Grange's privilege log, should not be protected because they suggest the attorneys were not providing legal advice, but were acting as claims adjusters. Kedron cites categories including "Regarding Future Handling and Investigation" and "Regarding Preservation and Inspection." [DE 63 at 5]. Additionally, Kedron challenges Grange Insurance's claim of privilege over

---

[2] The Supreme Court of Indiana has recognized that a lawyer appointed by an insurance company to defend its insured can represent both the insurer and the insured, meaning that the defense lawyer has an attorney-client relationship with both, as long as the interests of the insurer and the insured align. *See Cincinnati Ins. Co. v. Wills*, 717 N.E.2d 151, 161 (Ind. 1999). Grange Insurance share the same interests with RPS/Hazeltine in challenging the liability for the negligence and spoliation claims in both the Jessica Gaston case and this instant suit and has provided RPS/Hazeltine with defense support. Thus, Grange Insurance is a co-client of Attorneys Jennifer Davis, Thad Kelley, and Bill Kelley, and attorney-client privilege may be invoked to protect their communication.

documents that do not seem to contain confidential information between attorneys and clients. While the first argument is unpersuasive, the latter two prevail.

First, "the attorney-client privilege [can]not be used to prevent the disclosure of privileged communications against the now adverse but formerly commonly-represented parties." *Woodruff v. Am. Fam. Mut. Ins.*, 291 F.R.D. 239, 244 (S.D. Ind. 2013) (citing Ind. R. Prof'l. Conduct 1.7). In *Woodruff*, an insurer provided defense counsel for an insured in a car crash case. After an unsuccessful trial, the insured filed a bad-faith claim against the insurer who then tried to assert attorney-client privilege over its communications with the attorneys it hired to represent the insured. The court found the interests of insured and insurer to have become adverse and required the insurer to disclose the communications at issue. *Id.* at 245. The *Woodruff* court relied on multiple cases applying this exception to the attorney-client privilege when previously commonly represented parties later became direct opponents in litigation. *See Simpson v. Motorist Mut. Ins. Co.*, 494 F.2d 850 (7th 1974); *Med. Assurance Co., Inc. v. Weinberger, M.D.*, No. 4:06-cv-117, 2013 WL 501746 (N.D. Ind. Feb. 7, 2013); *Camacho v. Nationwide Mut. Ins. Co.*, 287 F.R.D. 688 (N.D. Ga. Dec. 3, 2012).

Here, Kedron brings forth no evidence that Grange Insurance and RPS/Hazeltine are making claims against each other in this third-party action or any other lawsuit. As a result, they are not adverse parties. Moreover, Kedron has offered no evidence that they are working in opposition to each other while working together to disprove the claims asserted by Kedron. In fact, Grange Insurance continues to provide defense for RPS/Hazeltine to this day. Without any showing of adverse

interests, Kedron has not established that the attorney-client privilege should be disturbed as to the correspondence between Grange Insurance and the RPS/Hazeltine attorneys.

Second, the attorney-client privilege shields confidential communication between attorney and client made for the purpose of obtaining legal advice. *Potts v. Allis-Chalmers Corp.*, 118 F.R.D. 597, 602 (S.D. Ind. May 28, 1987). The privilege does not apply "to the extent that an attorney has acted as a claim adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor . . . ." *Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, No. 2:07 cv 3, 2008 WL 2622803, at *2 (N.D. Ind. June 30, 2008) (quoting *Stout v. Ill. Farmers Ins. Co.*, 150 F.R.D. 594, 610 (1993)). In *Illiana Surgery*, a hospital seeking indemnification from its own insurer for property loss and damages from a database destruction incident challenged its insurer's claim of privilege over some documents produced by the law firm employed by its insurer. *Illiana Surgery*, 2008 WL 2622803, at *1. The court held that without providing evidence to show that the law firm performed legal advisory functions, fulfilling obligations beyond claims adjusting, the insured cannot assert attorney-client privilege over the disputed documents. *Id.* at *3. The "public policy issue behind this result is that insurance companies . . . should not be permitted to insulate the factual findings of its claims investigation by the involvement of an attorney to perform such work." *Id.* at *2 (quoting *Cont'l Cas. Co. v. Marsh*, No. 01 C 0160, 2004 WL 42364, at *2 (N.D. Ill. Jan. 6, 2004) (holding that the insurer's letter regarding the payment of the settlement was not privileged because the insurer was acting as a claims adjuster or claims process advisor,

conducting an "ordinary course of an insurer's business")). Therefore, the key question at issue is whether the documents Grange categorized as "Regarding Future Handling and Investigation" and "Regarding Preservation and Inspection" are factual findings from claims investigations typically performed by insurers post-accident, or legal advice given by attorneys or parties performing as attorneys in anticipation of litigation.

The three documents at issue were produced on December 7, 2015, and January 6, 2016, only one to two months after the Gaston accident happened on November 24, 2015, and about two years before the complaint for the Jessica Gaston Case was filed in the Wabash Superior Court on September 20, 2017. The details provided by the Amended Privilege Log and timeline of events suggests the documents were produced by Grange Insurance and its affiliates to gather information about the crash immediately, which is one of insurer's functions. It is unconvincing that at the time, Grange Insurance was already providing RPS/Hazeltine with legal advice for the litigation that would commence about two years later. Moreover, the matters discussed such as "investigation," "inspection," and "preservation" appear to relate to factual findings of claims investigation directly. These documents are produced within the "ordinary course of an insurer's business" and function as a claims processor, rendering them discoverable. *See Continental Casualty*, 2004 WL 42364, at *5. Without more detail from Grange Insurance to clarify the functions of the parties in creating these documents and the type of information they contain, Grange has not refuted Kedron's challenge to attorney-client privilege. Considering Grange Insurance had the opportunity to confront Kedron's argument in its Response to Kedron's Motion to

12

Compel [DE 66] and during the hearing but did not do so, Grange Insurance failed to meet its burden to present facts showing the privilege applies. Thus, Grange Insurance is ordered to produce documents categorized as "Regarding Future Handling and Investigation" (Grange 000016-18; Grange 000019-21) and "Regarding Preservation and Inspection" (Grange 000026-28).

Third, as a "general rule information regarding a client's attorney's fees is not protected by the attorney-client privilege because the payment of fees is not considered a confidential communication between attorney and client." *Corll*, 646 N.E.2d at 725; *see also Boulangger v. Ohio Valley Eye Inst.*, 89 N.E.3d 1112, 1116 (Ind. Ct. App. 2017). Yet, the attorney-client privilege still applies in situations where revealing a payee's identity or fee arrangement would also reveal confidential information. *See Hueck v. State*, 590 N.E.2d 581, 585 (Ind. Ct. App. 1992). The record includes nothing to suggest such a concern here. Accordingly, Grange Insurance is ordered to produce documents categorized as "Defense Invoice," (Grange 000022-23) "Defense Costs," (Grange 000039; Grange 000082; Grange 000087-89; Grange 000093-96; Grange 002322-2325), and "Defense Costs and Budgeting" (Grange 000193-197). Grange Insurance also asserted privilege over other cost-relevant documents categorized as related to attorney assignment, attorney tasks, defense strategies, and future handling. Those categories would necessarily include confidential legal advice, or privileged information, that should not be disclosed.

For the reasons above, the attorney-client privilege is properly asserted by Grange Insurance as to certain categories of information. Documents containing

confidential information between representatives of Grange Insurance and the RPS/Hazeltine Attorneys are protected. Nevertheless, the information Grange Insurance has categorized as "Regarding Future Handling and Investigation," "Regarding Preservation and Inspection," "Defense Invoice," "Defense Costs," and "Defense Costs and Budgeting" is not privileged because it does not contain legal advice or otherwise confidential communications.

### C. Correspondence from the Insurer to the Insured

Kedron challenges Grange Insurance's withholding of its correspondence directed to RPS and Hazeltine, whom Grange insures. Grange Insurance argues the insured-insurer privilege prevents the requested materials from being disclosed. Kedron disputes the applicability of the privilege to the requested information. Specifically, Kedron argues that only communications from the insured to the insurer are protected by the privilege, not communications from the insurer to the insured. Thus, Kedron wants Grange Insurance to produce its communications about the crash directed to RPS and Hazeltine but does not ask for RPS's and Hazeltine's communications to Grange.

The main goal of the insured-insurer privilege is to prevent "what should be a cooperative relationship among the insured, insurer and attorney" from being "undermine[d]." *Richey v. Chappell*, 594 N.E.2d 443, 446 (Ind. 1992). In *Richey*, the plaintiff in a personal injury action requested production of a statement the defendant made to his insurer concerning the accident. *Id.* at 444-45. Recognizing that the insurer may be exposed to sensitive matters about the insured while fulfilling its duty to defend

14

its insured against claims by third persons, the Indiana Supreme Court expanded the attorney-client privilege to insured and insurer. *Id.* at 446. The court held that "statements from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party are protected from disclosure." *Id.* at 447.

The *Richey* court only addressed discovery of statements from insureds to insurers. Citing *Richey*, the Indiana Court of Appeals later upheld a trial court's decision finding that "the [insured-insurer] privilege applies to communications **between** the insured and its agents to the insurer." *Steinrock Roofing & Sheet Metal, Inc. v. McCulloch*, 965 N.E.2d 744, 750 (Ind. Ct. App. 2012) (emphasis added and quotations omitted). In *Steinrock*, the plaintiff roofing contractor sought the claims file from the defendant homeowner's insurance carrier, but the court found the file protected by the privilege. *Id.* at 748–50. As insurance claims files include both the insurer's and the insured's communications to the other, *Steinrock* effectively extended *Richey* to protect communications from insurers and insureds.

Thus, Kedron has not overcome Grange Insurance's assertion of the insurer-insured privilege regarding its correspondence to RPS and Hazeltine about the November 2015 crash and subsequent litigation. Plaintiff's request for the correspondence from the insurer to the insured is denied.

### D. Responses to Certain Discovery Requests to the Extent They Relate to the Spoliation of Evidence

Lastly, Kedron argues that even if the spoliation-related information Grange Insurance withheld in the Amended Privilege Log is protected by attorney-client and

15

insurer-insured privileges, the privileges do not apply to matters involving a crime or fraud. Courts in other states have extended this crime-fraud exception to privileged information related to spoliation. As a result, Kedron argues information and documents related to the spoliation of the lighting system are discoverable.

"[T]he attorney-client privilege is not absolute, and sometimes the larger societal interest in preventing illegal conduct outweighs the equally important interest of safeguarding confidential communications. In such situations, the crime-fraud exception applies." *Lahr v. State*, 731 N.E.2d 479, 482 (Ind. Ct. App. 2000). The rationale underlying the crime-fraud exception is to assure "that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989). In determining whether the crime-fraud exception applies, Indiana courts utilize a two-part test. First, the moving party must make a prima facie showing that a sufficiently serious crime or fraud occurred. *Lahr*, 731 N.E.2d at 483. Next, the moving party "must establish some relationship between the communication at issue and the *prima facie* violation." *Id.*

To meet the prima facie burden, the evidence presented must provide a prudent person with a reasonable basis to suspect the perpetration of a crime or fraud. *Id.* (citation omitted). When the court cannot make an informed decision on whether particular communications fall within the crime-fraud exception to the privilege, *in camera* review of alleged privileged communications may be necessary. *Zolin*, 491 U.S. at 565. But before a court may conduct *in camera* review, the party opposing the privilege

16

must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence establishing the exception's applicability. *Id.* at 570-72.

Indiana recognizes spoliation as an independent tort, which "is analyzed either as a species of negligence or under the rubric of intentional interference with prospective or actual civil litigation." *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1032 (7th Cir. 2005). A defendant is liable in Indiana for negligent spoliation if a plaintiff shows that the defendant, who allegedly lost or suppressed the evidence, owed a duty to the plaintiff to preserve the material, "that the duty was breached, that [the plaintiff was] harmed by the breach, and 'that the harm resulted in damages that can be proven with reasonable specificity.'" *J.S. Sweet Co.*, 400 F.3d at 1034 (quoting *Thompson ex rel. Thompson v. Owensby*, 704 N.E2d 134, 140 (Ind. Ct. App. 1998)).

Here, this Court addressed the question of Grange Insurance's duty in its summary judgment order dated May 4, 2023. The Court held that Grange Insurance had a duty to exercise reasonable care to preserve the lighting system, but did not address the element of breach because it poses a question of fact to be decided by a jury. [DE 102 at 9-10]. Therefore, whether Grange Insurance breached its duty to preserve the lighting system in anticipation of litigation is still an open question.

In arguing that the crime-fraud exception should apply to communications about the alleged destruction of evidence, Kedron presents evidence in support of her spoliation claim. *See Zolin*, 491 U.S. at 570-72. Specifically, Kedron filed an affidavit from Jessica Ellis, P.E., who stated that Hyde's inspection on July 23, 2016, "altered" critical components of the lighting system and "prevented all future analysts from reliably

17

determining the activation state of the tail lamps at the time of the incident." [DE 63-12 at 12-13]. Additionally, Kedron points to an affidavit and expert report from Paul Thorgersen, P.E., C.F.E.I, who opined that Hyde's failure to preserve the condition of the connectors has "altered the evidence and prevented proper examination," and that Hyde's reports on the status of the lamp at the time of the collision contain inconsistency. [DE 63-11 at 2]. Kedron then directs the Court to Hyde's deposition testimony stating that he informed Attorney Jennifer Davis that he paused the inspection after determining that "further examination [of the lighting system] may be destructive in nature to the sealed unit." [DE 63-7 at 12]. Hyde then testified that he performed the additional testing after Attorney Davis instructed him to do so. [DE 63-8 at 8].

Based on the evidence produced to the Court, Kedron has not clearly established whether the crime-fraud exception applies to communications before Hyde inspected the lighting system in July 2016 between Grange Insurance's representatives, Attorney Davis, and Hyde. Kedron has, however, met her burden to support a reasonable belief that *in camera* review may yield evidence establishing the exception's applicability. *See Zolin*, 491 U.S. at 570-72.

Thus, the Court will conduct an *in camera* review of information responsive to Kedron's Interrogatory No. 3 and Requests for Production No. 1, No. 8,[3] and No. 11 to

---

[3] Kedron asserts the crime-fraud exception applies to her Requests for Production No. 1 and No. 8 in the body of her Memorandum in Support of First Motion to Compel [DE 63 at 10-11], but does not ask for the production of either request in her prayer for relief. Nevertheless, the Court will require Grange Insurance to respond to Requests No. 1 and No. 8—the extent related to the

the extent related to the alleged spoliation of evidence to determine whether a prudent person would have a reasonable basis to suspect the perpetration of a crime or fraud.

### III.  CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Compel [DE 62] is **DENIED IN PART** and **GRANTED IN PART**. Grange Insurance is **ORDERED** to

- produce correspondences between RPS/Hazeltine's attorneys (Davis, Kelley, and Kelley) and representatives of Grange Insurance as detailed as the analysis above in response to Kedron's discovery requests no later than **October 13, 2023**; and

- deliver information responsive to Kedron's Interrogatory No. 3 and Request for Production No 1, No. 8, and No. 11—the extent related to the alleged spoliation of evidence—to the undersigned on or before **October 13, 2023**, for purposes of *in camera* review.

The deadline for the close of all discovery is **EXTENDED** until **December 15, 2023**, for the limited purposes of (1) Grange Insurance's production of discovery responses consistent with this Order; (2) the Court's *in camera* review and resolution of the remaining crime-fraud exception issues; and (3) any necessary follow-up depositions. The deadline for filing any discovery-related, nondispositive motion deadline is **November 17, 2023**. Consistent with the mandate of Fed. R. Civ. P. 1 to secure a just, speedy, and inexpensive resolution of this action, the parties should expect that additional extensions of these case management deadlines are not likely to be granted absent a showing of circumstances beyond the control of the parties and their inability to negotiate those circumstances in the exercise of due diligence.

---

alleged spoliation of evidence—for *in camera* review purposes because such production may yield evidence to help the Court determine the applicability of the crime-fraud exception.

**SO ORDERED** this 29th day of September 2023.

    /s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge