UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEDRON GASTON,<br><br>        Plaintiff,<br><br>    v.<br><br>JACKIE C. HAZELTINE, et al.,<br><br>        Defendants. | Case No. 3:21-CV-896-CCB |

## OPINION AND ORDER

As a child in November 2015, Plaintiff was injured when the car she was riding in crashed into the back of semi-tractor trailer on a foggy night. Plaintiff's aunt, who was driving the car, died. Plaintiff's mother sitting in the front passenger seat was injured so severely that she could no longer care for Plaintiff and her sister. Plaintiff ended up in foster care. Through this action, Plaintiff has sued the driver of the semi, Jackie Hazeltine, and his employer, Royal Paper Stock Co., Inc. ("RPS"), for negligence and negligent infliction of emotional distress. Plaintiff has also sued RPS and Hazeltine's insurer, Grange Mutual Casualty Co. ("Grange") for spoliation based on testing done on the semi's rear lighting assembly in July 2016 by expert Adam Hyde.

Key issues include the functionality and activation of the semi's rear lighting system at the time of the accident; the handling of the lighting system after the accident, especially the right rear taillight; and the nature and extent of Plaintiff's loss and injuries as the result of the accident. Defendants retained experts to opine on these issues. Addressing Plaintiff's damages, psychiatrist Dr. Stevan Weine concluded in his expert report dated March 2, 2023, that Plaintiff did not suffer from any psychiatric condition at the time of his interview with her in February 2023 despite previous psychiatric diagnoses. Erik Anderson, a mechanical engineer, opined that in November 2022, the semi's rear-facing light assembly was well preserved and capable of being tested to

determine whether the bulbs were energized at the time of the accident. Steven Grundhoefer, P.E., a forensic engineer and traffic accident reconstructionist, submitted an expert report on March 24, 2020, then revised it on August 22, 2023, rendering multiple opinions about the accident including that the semi's taillights were functional and illuminated at the time of the accident.

Plaintiff has now moved to exclude all testimony from these three expert witnesses pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Alternatively, Plaintiff argues that the experts' testimony should be excluded based on the evidentiary balancing test set forth in Fed. R. Evid. 403.

**I.    LEGAL STANDARD**

Expert testimony is admissible at trial under Federal Rule of Evidence 702 if the testimony is relevant to a fact in issue, is based on sufficient facts or data, and results from reliable scientific or other expert methods that are properly applied. *Daubert*, 509 U.S. at 592–93. Before admitting expert testimony, the court "must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal quotation omitted). The burden to establish the admissibility of an expert's testimony by a preponderance of the evidence falls on its proponent. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

**II.   DR. STEVAN WEINE**

Grange retained Dr. Weine to evaluate whether Plaintiff suffered emotional trauma or psychiatric damages. All three Defendants have identified Dr. Weine as an expert.

**A.    Qualifications**

"An expert may be qualified by 'knowledge, skill, experience, training, or education.'" *Higgins v. Koch Dev. Corp.*, 997 F. Supp. 2d 924, 930 (S.D. Ind. 2014) (quoting Fed. R. Evid. 702). A

doctor with a medical degree is not automatically "qualified to opine on all medical subjects." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). Yet courts do not typically require an expert to be a specialist in a given field. *Id.* An expert is qualified to testify if his "qualifications provide a foundation for [him] to answer a specific question." *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). In other words, courts determine whether an expert is qualified by evaluating each of the expert's conclusions individually then assessing whether the expert has the "adequate education, skill, and training to reach them." *Gayton*, 593 F.3d at 617. An expert's specialization, or lack thereof, "typically goes to the weight to be placed on [his] opinion, not its admissibility. *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016).

Plaintiff argues that Dr. Weine is not qualified as an expert to testify about adolescents who sustain loss and injury from an event such as a car crash and how it impacts their development. According to Plaintiff, Dr. Weine's CV shows that he is experienced as a psychiatrist on global health and refugee issues but lacks experience and professional publications related to trauma from car crashes, especially those involving children or adolescents. Plaintiff notes one relevant reference on Dr. Weine's CV to "Forensic Psychiatry Practice, personal injury, disability and custody cases (including IME's, depositions, and courtroom testimony)" under the heading "CONSULTING." [DE 123-5 at 14]. Unlike all the other entries in his Consulting section, however, the Forensic Practice entry includes no dates to show the extent of Dr. Weine's experience in this area. From this, Plaintiff infers that this is Dr. Weine's first experience as an expert on this topic.

Contrary to Plaintiff's assertion, Dr. Weine's CV includes evidence of education, training, medical practice, research, and publication related to adolescents and their mental health in the face of trauma. Dr. Weine's CV shows that he held a fellowship at Yale University focused on the mental health of college students. [DE 123-5 at 11]. He worked as an attending psychiatrist for Yale University's Adolescent Partial Hospital. [*Id.* at 12]. He co-authored academic and psychiatric

3

journal articles, many of which involved psychiatric treatment and care of child and adolescent patients. [*Id.* at 18–24].

In an affidavit attached to Grange's response to Plaintiff's instant motion, Dr. Weine states that he has "a wide breadth of experience in analyzing, diagnosing, and treating children and adolescents involved in traumatic situations, in both [his] clinical and forensic practice." [DE 123-8 at 2]. He also explains that "[t]he analysis, diagnosis, and treatment of an individual who suffers from PTSD due to forced displacement caused by unstable situations in their country, and that of an individual who suffers PTSD due to some other traumatic or violent event, is approached in largely the same fashion." [*Id.* at 2]. Additionally, he notes that his forensic psychiatric practice spans more than 20 years and has involved review and analysis of "numerous cases involving psychiatric trauma to children and adolescents, including children and adolescents involved in motor vehicle accidents." [*Id.* at 1–2]. To the extent that Dr. Weine testified as an expert witness at trial or by deposition in other cases in the last four years, he should have disclosed those experiences. *See* Fed. R. Civ. P. 26(a)(2)(B)(v). That said, Dr. Weine's CV establishes his qualifications as a psychiatrist with varied experiences related to adolescent victims of trauma even though the CV does not indicate the duration of his forensic psychiatry practice or any specific instances where he has served as an expert on any issue.

Plaintiff also contends that Dr. Weine lacks experience in forensic interviews based on a failure to engage in a comprehensive discussion of informed consent during his interview with Plaintiff. As Plaintiff's psychological expert on damages, Dr. Polly Westcott attests, informed consent is integral to any forensic assessment according to the American Academy of Psychiatry and the Law Practice Guideline for the Forensic Assessment. [*See* DE 110-12 at 1]. "[E]valuees must always be informed of the limits of confidentiality, the persons with whom the information will be shared, and the purpose of the interview." [*Id.* at 8 (Forensic Guideline 5.2, AAPL Practice

4

Guideline for the Forensic Assessment (2015 supplement), *also available at* Am. Acad. of Psychiatry & the Law, https://www.aapl.org/guidelines (last visited Sept. 15, 2024))]. The transcript of Plaintiff's interview—submitted to the Court by Plaintiff herself—includes the following dialogue between Dr. Weine and Plaintiff at the beginning of the interview:

> STEVAN WEINE: Thank you. Okay, hi Kedron. Again, I'm Dr. Steve Weine. I'm a psychiatrist from Chicago, and I was asked to review some records and to interview you as part of this case.
>
> KEDRON GASTON, Okay.
>
> STEVAN WEINE: Okay? So, you know that what you say to me is not confidential
>
> KEDRON GASTON: Yes.
>
> STEVAN WEINE: —like it is when you go to a doctor, but it's only—I'm just going to use it for purposes of this—this case, writing a report, perhaps giving testimony, okay?
>
> KEDRON GASTON: Yeah.

[DE 110-3 at 1]. This transcript along with Dr. Weine's affidavit shows that he discussed the elements of informed consent, including the limits of confidentiality, the extent of his intended disclosures, and the purpose of the interview, with Plaintiff before she agreed to proceed with the interview. [*See* DE 123-8 at 2]. Dr. Weine's method of securing informed consent from Plaintiff comports with Guideline 5.2, which both he and Dr. Westcott have presented to the Court.

Despite Plaintiff's arguments, Grange has shown that Dr. Weine's professional experiences provide a foundation from which he can answer questions about the effect of the loss and injury Plaintiff suffered in the November 2015 car accident on her development. *See Hall*, 840 F.3d at 929; *Gayton*, 593 F.3d at 617. Thus, Dr. Weine is qualified to testify as an expert under Rule 702.

### B. Reliability

Even qualified experts cannot offer opinions based only on their "say-so." *Sturgis v. R&L Carriers, Inc.*, 554 F. Supp. 3d 976, 981 (N.D. Ind. 2021) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S.

5

137, 157 (1999). Expert testimony must be "based on sufficient facts or data; [be] a product of reliable principles and methods; and [reflect] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. "The fact-specific nature of the *Daubert* gatekeeping inquiry vests considerable latitude in the trial court, both in determining the method by which the reliability of the proposed expert testimony will be measured and whether the testimony is, in fact, reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (citing *Kumho Tire*, 526 U.S. at 152).

To validate scientific testimony, courts often consider whether the methodology used can be or has been tested; has undergone peer review and publication; has a known or potential error rate; or enjoys general acceptance in the relevant professional community. *Daubert*, 509 U.S. at 593–94. While these inquiries may not apply to every type of opinion evidence, the court must always ensure that the expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Plaintiff argues that Dr. Weine's opinions, as stated in his March 2023 report, are not reliable for two main reasons. First, Plaintiff contends that Dr. Weine did not review sufficient facts or data before reaching his conclusions about her mental health and history. Second, Plaintiff challenges Dr. Weine's methodology as inconsistent with relevant ethical guidelines for the practice of forensic psychiatry. Based on these two shortcomings, Plaintiff asserts that Dr. Weine's opinions do not reflect a reliable application of the principles and methods acceptable in the mental health field to the full range of facts in this case.

    **1.    Collateral Information**

Under AAPL Forensic Guideline 5.3, review of collateral information is important to a forensic assessment because it helps the psychiatrist develop a complete understanding of the subject's history and condition. [DE 110-12 at 10–13]. Citing Dr. Westcott, Plaintiff argues that Dr. Weine violated Guideline 5.3 because he did not include collateral information in his assessment.

[*See id.* at 2]. As a result, Plaintiff contends that Dr. Weine did not consider sufficient facts and data before reaching his conclusions about her. Her argument fails for two reasons.

First, Forensic Guideline 1 explicitly states that the Guidelines are intended to inform the conduct of forensic assessments by qualified psychiatrists and clinicians but "should not be construed as dictating the standard for forensic evaluations." [*Id.* at 5]. Guideline 1 also makes clear that each psychiatrist must use professional judgment in deciding whether other acceptable methods of performing a forensic evaluation are appropriate based on the unique facts, clinical factors, and applicable legal authority involved. [*Id.*].

Second, Dr. Weine did consider collateral information despite Plaintiff's allegation to the contrary. Plaintiff defines collateral information as "information obtained from sources other than the subject . . ., such as family members, friends, colleagues, medical records, or legal documents" but does not specify what collateral information Dr. Weine excluded from his analysis. [DE 109 at 8]. According to Dr. Weine's report, he reviewed:

1) Medical records of Lutheran General;
2) Medical records of Dr. Lourdo Savariar;
3) Medical records of Wabash Ambulence (sic);
4) Records of Wabash City Schools;
5) Medical records of Dr. Westcott;
6) Deposition of Kedron Gaston;
7) Motions, exhibits, petitions, and answers to interrogatories;

[DE 123-5 at 1]. Plaintiff has not challenged Dr. Weine's listed sources of information, which include medical, education, and legal records. These resources qualify as collateral information under Guideline 5.3 and Plaintiff's own definition. Additionally, Dr. Weine's stated opinions reference information that would have been included in these collateral sources such as physical and mental diagnoses from the accident, medical care and treatment post-accident, grades at school, work performance, and personal relationships. [*Id.* at 8–9]. Thus, Dr. Weine did consider collateral information and incorporate it into his forensic assessment.

7

Dr. Weine also seems to have considered collateral information beyond that listed in his report.  In his recent affidavit, he stated that he "reviewed a variety of documents and videos, including Ms. Gaston's school records from elementary school to present, her employment and training records, medical records, video footage of her deposition, and video footage of the depositions of her guardians, Matthew and Tamara Cochran." [DE 123-8 at 2].  This shows that Dr. Weine reviewed information regarding Plaintiff's schooling at Columbus East High School and Ivy Tech, her employment as a hospice home health aide and private caregiver, and her life under her guardians' care, all of which he referenced in the narrative section of his report without any corresponding listing in his "documents reviewed" section.  Plaintiff argues that these omissions warrant sanctions because Dr. Weine was required to disclose the full range of facts and data he considered in forming his opinions.  *See* Fed. R. Civ. P. 26(a)(2)(B)(ii).

"If a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "[E]xclusion of non-disclosed evidence is automatic and mandatory . . . unless non-disclosure was justified or harmless."  *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012), *as amended* (Feb. 2, 2012) (internal quotations omitted).  Grange has not explained why Dr. Weine did not list the full range of collateral information he considered in reaching his conclusions.  Even so, the omissions were harmless.

In deciding whether non-compliance with Rule 26(a) disclosure requirements was harmless, courts should consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date."  *Id.* (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).  Any sanction here would address a technical defect for which there is no evidence of bad faith or willfulness.  Any prejudice

to Plaintiff is minimal and has been remedied to a degree with Dr. Weine's recent affidavit, which discloses his sources. To ensure fair consideration of the merits of this case, any other remedy is better handled through cross-examination of Dr. Weine before the factfinder. Therefore, Dr. Weine's delayed disclosure of the sources of his opinion is harmless, and sanctions are unwarranted.

### 2. Context, Frequency, Intensity of Symptoms

Plaintiff also argues that Dr. Weine's opinions are unreliable because his interview and report did not address the context, frequency, and intensity of her symptoms. As noted by Dr. Westcott, AAPL Forensic Guidelines 6.2 emphasizes the importance of obtaining information about the context in which symptoms occur, including how they interfere with activities such as school, work, and relationships. [*See* DE 110-12 at 2, 17–27]. Dr. Weine's notes, which were disclosed to Plaintiff's counsel, his interview, and his report reflect investigation into Plaintiff's experiences at school, at work, and in relationships. [*See* DE 123-5 at 1–10; DE 123-7]. So Dr. Weine did not ignore his professional responsibility to address the context of Plaintiff's symptoms in assessing the effect of the accident upon her. That said, Plaintiff wants the Court to adopt Dr. Westcott's opinion that Dr. Weine did not develop this context sufficiently. [DE 110-12 at 2]. Any disagreement between Dr. Weine and Dr. Westcott about Plaintiff's damages in the context of her symptoms goes to the substance of their opinions, not the reliability of Dr. Weine's opinion making it an issue for the ultimate factfinder, not the evidentiary gatekeeper.

Similarly, Plaintiff's argument that Dr. Weine failed to explore the frequency and intensity of her symptoms is misplaced. AAPL Forensic Guideline 6.3 provides:

> A thorough mental status examination should be performed in most types of assessments. Information from direct inquiry related to aspects of functioning (e.g., basic cognitive assessments) adds to clinical observations and general interview data. The examination will elicit information about the frequency and severity of psychiatric symptoms, including mood, anxiety, trauma-related symptoms, thought content, thought form, delusional beliefs, perceptual disturbances, cognition, and concentration and relevant comments, insights, and judgment.

9

[*Id.* at 2, 27]. Relying again upon Dr. Westcott's affidavit, Plaintiff challenges the level of detail in Dr. Weine's questions to her about the frequency and intensity of her anxiety symptoms and their effect on her activities such as education, work, family, and other activities/leisure. [*See id.* at 2]. Dr. Weine did not ignore these issues either. He questioned her about her thoughts and emotions and their frequence and intensity over time. While Dr. Westcott and Dr. Weine may conduct their forensic assessments with different styles, Dr. Weine did not neglect his responsibility to explore the frequency and intensity of Plaintiff's symptoms in his interview and report.

Dr. Westcott—and therefore Plaintiff—also suggest that Dr. Weine did not consider all the facts and data or follow the accepted methodology for diagnosing or ruling out any psychiatric disorders she may have been suffering at the time of the interview. [*See id.* at 2–3]. Plaintiff makes only generalized arguments, however. She references, without detailing, accepted principles and methodologies for diagnosing the psychiatric disorders of Major Depressive Disorder ("MDD"), Generalized Anxiety Disorder ("GAD"), and Posttraumatic Stress Disorder ("PTSD") under the *Diagnostic and Statistical Manual for Mental Disorders—Fifth Edition* and then concludes that "these accepted best practices were not followed by Dr. Weine during his interview with [Plaintiff] and thus the necessary facts and data were not obtained." [DE 109 at 10]. Plaintiff also states generally that "Dr. Weine did not ask about all of the factors necessary to diagnose or rule out a psychiatric disorder." [*Id.*]. Yet Dr. Weine reported Plaintiff's scores on the diagnostic Patient Health Questionnaire ("PHQ"), GAD, and PTSD tests consistent with those best practices.

Plaintiff further argues that Dr. Weine's opinions are not the product of reliable principles and methods because of how he did, or did not, record Plaintiff's history in his report. Dr. Weine's report presented Plaintiff's history largely through quotations without any attribution. When read in context, however, most of the quotes derive from Dr. Weine's "in-person independent medical examination," or interview, with Plaintiff on February 25, 2023. [*See* DE 123-5 at 1–8]. The

10

problem is that when comparing the report's quotations to the interview transcript, many do not match. [*Compare* DE 110-3, *with* DE 110-4]. In one instance, Dr. Weine even misquotes a medical record. [*Compare* DE 110-4, *with* DE 110-5]. Typographical errors also litter Dr. Weine's report. Plaintiff counted 97 misquotes and errors in Dr. Weine's report. She argues that regardless of whether these mistakes amount to gross negligence or intentional misrepresentation, they show that Dr. Weine is not a reliable witness. Dr. Westcott also states that "[t]he number and degree of misquotes made by Dr. Weine fall well short of the standards required of professionals in this field." [DE 110-12 at 2].

In any profession, 97 misquotes in a 10-page report would raise red flags. But Dr. Weine explained in his affidavit that he prepared the report without the interview transcript relying solely on his personal notes typed during the interview. [DE 123-8 at 2]. The specter of intentional misrepresentation that might have been inferred by comparing Dr. Weine's report to the interview transcript disappears when compared to Dr. Weine's notes, which corroborate the quotes in his report. [*Compare* DE 123-7, *with* DE 110-4]. More importantly, Dr. Weine's report is not materially different from the interview transcript or his interview notes. Therefore, the unattributed quotes and typographical errors may be evidence of sloppy report drafting but do not, on their own, establish a lack of reliability sufficient to justify exclusion of Dr. Weine's testimony.

Lastly, Plaintiff disagrees with Dr. Weine's assessment of the quality of her life after the accident alleging that Dr. Weine's conclusions are not supported by the facts. She accuses Dr. Weine of manipulating the facts and misquoting her in his report "to make the facts fit the narrative he was hired to advance." [DE 109 at 17]. First, Plaintiff has identified a factual dispute about her quality of life. Factual issues are not resolved by exclusion of evidence. Rather, factual disputes go to the weight of an expert's opinion, not its admissibility, and should be explored by the factfinder through cross-examination. *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586–87 (7th Cir. 2000).

Second, Plaintiff overstates inferences she has made from Dr. Weine's report as allegations of serious misconduct without support in the record. All Plaintiff has done is foreshadow a "battle of the experts" that could arise at trial, not present a persuasive argument that Dr. Weine's opinions are based on unreliable principles and methods. Thus, a preponderance of the evidence shows that Dr. Weine's testimony is admissible under Rule 702 and *Daubert*. *See Varlen Corp.*, 924 F.3d at 459.

### C. Federal Rule of Evidence 403

"Federal Rule of Evidence 403 overlays all other evidentiary rules by stating that a court may 'exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017). Plaintiff takes her concerns about the reliability of Dr. Weine's report one step further and argues that it will confuse or mislead the jury because he allegedly mishandled facts, manipulated the record, and relied on false evidence. Plaintiff's challenges to the reliability of Dr. Weine's opinion have already been dismissed. And she presents no other arguments of undue prejudice from his testimony. Even if she could, she has not shown that any such prejudice substantially outweighs the probative value of Dr. Weine's testimony.

"Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *United States v. Loughry,* 660 F.3d 965, 971 (7th Cir. 2011). Before admitting evidence, a district court should "weigh the need for and probative value of the evidence against potential harm that its admission might cause." *United States v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012). There is nothing confusing or misleading about Dr. Weine's testimony as his report explains Plaintiff's history and his resulting opinions clearly and concisely. There is nothing shocking about Dr. Weine's testimony and opinions. And given the centrality of the nature and extent of Plaintiff's

12

damages to this case, Dr. Weine's opinions are highly probative. Therefore, Dr. Weine's opinions and testimony are admissible even under Fed. R. Evid. 403.

### III.  ERIK ANDERSON

Erik Anderson was retained by Grange "to determine whether the current condition of [the rear right] trailer taillight bulb allows for examination and analysis for determining whether the bulb filament was energized at the time of the crash." [DE 110-7 at 2; DE 123-9 at 3]. In reaching the conclusions incorporated into his report, Mr. Anderson reviewed a variety of evidence including video footage and photographs from a visual inspection of the semi's rear-facing light assembly conducted on November 29, 2022, which he did not attend. The visual inspection had been noticed by RPS and Mr. Hazeltine on November 17, 2022. [DE 60]. According to the Notice, the visual inspection would confirm the condition of the light assembly that Grange's expert Adam Hyde had inspected in July 2016. It also set forth a protocol for the visual inspection. [*Id.*]. Among other things, the protocol limited all contact with the light assembly to Mr. Hyde; required the entire process to be recorded electronically by an identified individual with photograph and video recording allowed by any attendee; and established a certification process for all in attendance. [*Id.*].

Plaintiff responded to RPS and Hazeltine's Notice of the visual inspection reiterating her position that the light assembly had already been destroyed, or spoliated, by Mr. Hyde in 2016 and that this visual inspection would be a "sham." [DE 61 at 3]. Plaintiff did not object to any part of the protocol presented by RPS and Hazeltine; she simply repeated her ongoing argument that Mr. Hyde's spoliation of the light assembly in 2016 prevented any further analysis of the highly relevant light assembly. Neither she nor any representative, including her counsel, attended the visual inspection on November 29, 2022. Now Plaintiff argues that Mr. Anderson's opinions should be excluded pursuant to Fed. R. Evid. 702 and *Daubert* because they are not the product of reliable principles and methods. Plaintiff contends that Mr. Anderson relied on evidence from the visual

13

inspection conducted without an approved protocol and that he improperly disregarded evidence supporting a finding contrary to his opinion.  Alternatively, Plaintiff argues that Mr. Anderson's testimony would confuse a jury and should be excluded under Fed. R. Evid. 403.

> **A.  Reliability**

Plaintiff argues that Mr. Anderson's opinions are unreliable because the foundation of his opinion comes from his review of documentation of the November 2022 visual inspection, which was improperly conducted without an agreed protocol or a Court order addressing her alleged objection.  According to Plaintiff, RPS and Hazeltine[1] violated N.D. Ind. L.R. 37-1 by proceeding with the visual inspection without a Court order or an agreed protocol in place.  Local Rule 37-1 requires parties to certify to the Court that they have conferred in good faith or attempted to do so to resolve a discovery dispute before filing a motion.  In this situation, RPS and Hazeltine's Notice of Inspection did not demonstrate any dispute requiring them to confer with Plaintiff before filing the Notice.  Plaintiff's response to the Notice seems to convey some level of dispute about which she did not confer with RPS and Hazeltine before filing the response.  Thus, Plaintiff's Local Rule 37-1 allegation is misplaced as she was the party who likely violated the Local Rule.

Aside from any violation of Local Rule 37-1, Plaintiff's response to the Notice did not request any relief related to the noticed visual inspection.  [DE 61].  She did not raise any questions about the inspection protocol presented by RPS and Hazeltine in their Notice.  She did not ask the Court to stop or otherwise modify the terms of the noticed visual inspection.  She simply opined about RPS and Hazeltine's motivations in seeking another inspection of the light assembly, calling it a "sham inspection."  [*Id.*].  Therefore, Plaintiff's response presented no issue to be decided by the

---

[1] In the instant Motion, Plaintiff states that Mr. Anderson violated Local Rule 37-1 by "proceed[ing] with his investigation without receiving an Order from this Court and without an agreed protocol being in place." [DE 109 at 20]. In her reply brief, however, Plaintiff acknowledges that Mr. Anderson did not attend the visual inspection, which was performed by Adam Hyde." [DE 125 at 5]. Thus, the Court assumes Plaintiff intended to argue that RPS and Hazeltine, the parties who noticed the visual inspection, violated Local Rule 37-1 by proceeding with the inspection.

14

Court. Now, Plaintiff seems to target the reliability of Mr. Anderson's opinions because her response to the Notice did not stop the visual inspection in November 2022. Plaintiff presents no authority to link the reliability of Mr. Anderson's methods and opinions to her concerns about the visual inspection. Without more, Mr. Anderson's testimony and opinions will not be excluded under Rule 702 and *Daubert*.

### B. Federal Rule of Evidence 403

Plaintiff's alternative argument for exclusion of Mr. Anderson's opinions and testimony as confusing to a jury under Fed. R. Evid. 403 also fails. Plaintiff focuses on this Court's decision to adopt the Wabash Superior Court's findings in Plaintiff's mother's case against RPS and Hazeltine regarding spoliation of the light assembly by Mr. Hyde during his July 2016 inspection. Indeed, this Court found that the Wabash court's findings on spoliation apply to this litigation. [DE 77 at 18]. The Court also found that while RPS and Hazeltine could not relitigate the spoliation issue, Grange could. [*Id.* at 12]. Plaintiff uses that distinction to suggest that Mr. Anderson's opinions about the light assembly, which differ in some respects from other expert opinions of record in this case, would confuse a jury as to how the same act—Mr. Hyde's 2016 inspection—could constitute spoliation by RPS and Hazeltine but not Grange.

Plaintiff's concern is unfounded. The issue of the state of the light assembly is central to the spoliation claim against Grange. As a result, Mr. Anderson's opinions about the light assembly have high probative value. Plaintiff only hints that Mr. Anderson's opinions would be unduly prejudicial based on the differences between his opinions and those of other experts. Yet the jury's precise role is to consider competing evidence to answer the factual questions before it. Plaintiff offers nothing more to support her contention that a jury would be confused by either Mr. Anderson's opinion or the overarching question of whether Grange spoliated evidence regardless of the Wabash court's finding on spoliation by RPS and Hazeltine.

15

Therefore, the probative value of Mr. Anderson's opinions is not substantially outweighed by the risk of undue prejudice or confusing the jury. Accordingly, Mr. Anderson's opinions and testimony are admissible under Fed. R. Evid. 403.

## IV.     STEVEN GRUNDHOEFER, P.E.

Steven Grundhoefer was retained by RPS and Hazeltine to conduct a study and survey of the November 2015 collision site for purposes of assisting in the analysis and reconstruction of the accident at issue. [DE 121-3 at 1]. Mr. Grundhoefer summarized his opinions into 43 bullet points. [DE 121-4 at 14–21]. Plaintiff challenges one of those opinions and asks that the entirety of Mr. Grundhoefer's opinion be excluded as unreliable under Fed. R. Evid. 702 and *Daubert*, or as being confusing to the jury under Fed. R. Evid. 403.

Plaintiff challenges Mr. Grundhoefer's opinion that the four rear taillights on the semi-trailer were illuminated at the time of the collision because he based that opinion on police photographs taken after the crash. Plaintiff contends that this opinion conflicts with the expert opinion presented by Mr. Hyde in her mother's case before the Wabash court that the lights were not illuminated at the time of the accident. She also contends that Mr. Grundhoefer's conclusion deviates from testimony from an officer present at the scene and another who investigated the collision later. Thus, she argues that Mr. Grundhoefer improperly cherry-picked evidence to reach a conclusion he preferred and that the conflicting positions of the defense experts cannot be reproduced making his opinions unreliable.

Plaintiff's arguments about Mr. Grundhoefer's illumination opinion prove once again that this case is likely to require a "battle of the experts" to be decided. Plaintiff disputes whether the rear lights were illuminated at the time of the crash. Plaintiff articulates evidence and expert opinions that might show that the lights were not illuminated. But RPS, Hazeltine, and Grange present evidence in the briefing of the instant motion that might ultimately show that the lights were

16

illuminated at the time of the crash. Expert evidence will likely be needed to help the factfinder navigate the competing evidence to reach a conclusion about illumination that will help determine whether Plaintiff prevails on her negligence, negligent infliction of emotional distress, and spoliation claims. Plaintiff is trying to circumvent the important role of the factfinder with unsupported arguments that Mr. Grundhoefer's illumination opinion is unreliable and cannot be useful to the factfinder.

Not only has Plaintiff failed to support her argument against Mr. Grundhoefer's opinion, RPS and Hazeltine have shown that Mr. Grundhoefer relied on more than one set of police photographs in reaching his illumination opinion. Mr. Grundhoefer's amended report and his affidavit attached to briefing on this motion show that he considered photographs and videos from inspections of the taillights and bulbs in question in addition to police scene photographs to reach his conclusion about the illumination of the lights at the time of the collision.

Plaintiff also suggests that Mr. Grundhoefer cherry-picked evidence by ignoring the deposition testimony of an officer on the scene, Detective Sergeant Mike Davis, and the officer who later investigated the collision, Trooper Swisher. At his deposition, Officer Davis testified on the illumination of the flashers while he was on the scene. Plaintiff implies that Officer Davis's testimony contradicts Mr. Grundhoefer's conclusion about the lights but does not explain the alleged contradiction. On the other hand, RPS and Hazeltine contend that Officer Davis's testimony does not contradict Mr. Grundhoefer's opinion at all. Trooper Swisher testified that he did not think the taillight was working before the crash. [DE 126 at 4]. While Trooper Swisher's testimony may contradict Mr. Grundhoefer's opinion, Plaintiff provides no authority to suggest that an expert reviewing multiple sources of evidence must reach a conclusion that matches every witness's perspective to be reliable and admissible. Rather, Plaintiff's concerns reinforce the need

17

for the factfinder to consider the complete range of evidence, including Mr. Grundhoefer's opinion, in deciding whether the lights were illuminated or not.

Thus, Mr. Grundhoefer's illumination opinion, and the entirety of opinions included in his expert report, are sufficiently reliable for admission into evidence under Rule 702 and *Daubert*. And Plaintiff's unsupported contention that Mr. Grundhoefer's illumination opinion, which could lead to a conclusion different than hers about the lights, will confuse the jury does not warrant exclusion of his opinions under Fed. R. Evid. 403 either.

## V. CONCLUSION

As discussed above, the opinions of Defendants' experts, Dr. Stevan Weine, Erik Anderson, and Steven Grundhoefer, P.E., are relevant to facts in issue, are based on sufficient facts or data, and result from reliable methods and a level of intellectual rigor accepted within their professions. *See Daubert*, 509 U.S. at 592–93; *Kumho Tire*, 526 U.S. at 152. The opinions of Dr. Weine, Mr. Anderson, and Mr. Grundhoefer will also assist the trier of fact in understanding the evidence or determining a fact in issue. *See Gopalratnam*, 877 F.3d at 779. Defendants have thus established the admissibility of the opinions of Dr. Weine, Mr. Anderson, and Mr. Grundhoefer under Fed. R. Evid. 702 by a preponderance of the evidence. *See Varlen Corp.*, 924 F.3d at 459.

Accordingly, Plaintiff's Motion to Exclude the Testimony of Stevan Weine, M.D., Erik Anderson, and Steven Grundhoefer is **DENIED**. [DE 108].

SO ORDERED.

September 18, 2024

                                            */s/Cristal C. Brisco*
                                            CRISTAL C. BRISCO, JUDGE
                                            UNITED STATES DISTRICT COURT