UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEDRON GASTON, | |
| Plaintiff, | |
| v. | Case No. 3:21-CV-896-CCB |
| JACKIE C. HAZELTINE, et al., | |
| Defendants. | |

## OPINION AND ORDER

Ripe before the Court is Defendant Grange Mutual Casualty Company's ("Grange's") motion for summary judgment. Through its motion, Grange seeks summary judgment on Count II of the Plaintiff Kedron Gaston's ("Kedron's") complaint alleging that Grange spoliated critical evidence relevant to Kedron's negligence and negligent infliction of emotion distress claims against Defendants Royal Paper Stock Company, Inc. ("Royal Paper") and Jackie C. Hazeltine ("Mr. Hazeltine") in Count I of her complaint. Based on the applicable law, facts, and arguments, Defendants' motion for summary judgment will be **DENIED**.

### I. RELEVANT BACKGROUND

The facts related to Kedron's spoliation claim have been well developed in this Court's previous opinions addressing two previous motions for summary judgment (ECF 77, 102) and a *Daubert* motion (ECF 160). As relevant here, those facts are repeated and augmented based on the parties' statements of material facts submitted with Grange's instant motion for summary judgment. As a result, the following facts are

largely not in dispute. Any disputed material facts will be addressed in the substantive analysis below.

As a child in November 2015, Kedron was injured when the car she was riding in on a foggy day rear-ended a semi-tractor trailer driven by Mr. Hazeltine and owned by his employer, Royal Paper. (ECF 9 at 3). Officer Jerry Honeycutt, who responded to the crash scene, reported that the fog was thicker than he had ever seen. (ECF 166-13 at 4). One of the main issues that will need to be resolved in deciding whether Royal Paper and Mr. Hazeltine were negligent and caused the crash is how visible the stopped trailer was when the car rear-ended it. A key fact in answering that question is whether the rear lights on the trailer were illuminated at the time of the crash.

Grange, as Royal Paper's and Mr. Hazeltine's insurer, hired counsel to represent them. Their counsel then hired Adam Hyde, an accident reconstructionist, who performed two inspections of the trailer—the first in December 2015 and the second on July 23, 2016. The first inspection was a visual inspection of the trailer and the rear lighting system. (ECF 166-6 at 4). In his resulting report on March 1, 2016, Mr. Hyde found that one of the four rear-facing lights on the back of the trailer was not "functioning at the time of the inspection" and failed to illuminate. (ECF 166-3 at 8.) This non-functional light was the third light from the left on the rear side of the truck ("Light Number 3"). Hyde noted that, during a "cursory inspection of the lights, [the bulb of Light Number 3] was found to be broken" and that "[u]pon further examination through the red lens, [he] found parts of the bulb unit were broken resting at the base of the unit." (*Id.* at 9.)

2

Mr. Hyde's second inspection in July 2016 involved removal of the trailer's rear-facing lights and testing them to assess their functionality and illumination status before the crash. (ECF 166-4 at 3). In his second report on October 15, 2016, Mr. Hyde described how he first examined the lights while affixed to the trailer finding that Light Number 3 was unplugged just as it had been during his first inspection. (*Id.* at 5). He then removed the Light Number 3 assembly "by pulling it out of the rubber housing." (*Id.* at 6). To access and view the Light Number 3 bulb and its filaments, Mr. Hyde cut through the back side of its assembly. (*Id.* at 6). He found the bulb undamaged and intact in contrast to his earlier assessment that the bulb appeared broken. (*See id.* at 6–7). During his examination of the bulb filaments, Hyde found that the brake light filament was undamaged, but the taillight filament displayed a condition known as "hot shock." (*Id.* at 11). Hot shock occurs during a crash when "the ductile filament is suddenly accelerated and, due to the inertia, it stretches and uncoils." (*Id.* at 11). Mr. Hyde concluded that all "four taillights were illuminated at the scene of the crash" based on police scene photographs showing all four lights illuminated and the "hot shock" found in Light Number 3. (*Id.* at 13). Mr. Hyde also concluded that the Light Number 3 assembly was disconnected, or unplugged, "at some point after the impact, most likely during the removal of the [car] and/or trailer from the crash scene." (*Id.*).

The parties dispute the effect of the July 23, 2016, testing on the condition of the rear lighting evidence. Grange contends that Mr. Hyde secured and preserved Light Number 3 and maintains possession of it such that it is available for additional testing. (ECF 166-6). Grange's expert, Erik Anderson, determined that the documentation of

3

evidence gathered as part of Mr. Hyde's July 2016 inspection of Light Number 3 and its assembly was sufficient to determine whether Light Number 3 was energized and illuminated at the time of crash. (ECF 166-2 at 15). Mr. Anderson also found that the "cutting of the plastic rear housing . . . did not and does not prevent the examination and analysis of the bulb filaments for hot-shock." (ECF 166-2 at 15).

According to Kedron's experts, however, Mr. Hyde did not properly preserve Light Number 3 during his testing in July 2016. Kedron's expert Paul Thogersen opined based on review of photographs that "the condition of the lighting connectors" was not preserved and that "[d]irt and dust deposits on the lamp housings were removed which removes and alters evidence of the connections to the lamps." (ECF 169-2 at 2). Thogersen also determined that "the inconsistency between the described condition of the lamp in [Hyde's] two reports"—a broken bulb versus an intact bulb—makes it "impossible to draw conclusions about the status of the lamp at the time of the collision." (*Id.*).

Kedron's expert Jessica Ellis similarly concluded that "[t]he actions taken by the investigator in this inspection prevented all future analysts from reliably determining the activation status of the tail lamps at the time of the incident." (ECF 166-7 at 12). Ms. Ellis was particularly concerned about the luminosity, or level of light emanating from, Light Number 3 at the time of the crash and stated that it is now impossible to measure the light from Light Number 3 at the time of the crash because Mr. Hyde's testing physically altered the light and its assembly. (ECF 166-8 at 47–48).

Through its instant motion for summary judgment, Grange contends there are no genuine disputes of material fact, and it is entitled to judgment as a matter of law, on Kedron's spoliation claim. Grange argues that Kedron cannot meet her burden (1) to demonstrate that Grange breached its duty to maintain evidence because the trailer, the light assembly, and the electrical connectors were not spoliated; (2) to demonstrate that any spoliation that may have occurred proximately caused her harm; and (3) to prove her damages with any degree of specificity.

## II.  LEGAL STANDARD

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not a tool to decide legitimately contested issues, and it may be granted only if no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). There must be more than a mere scintilla of evidence in support of the opposing party's position and "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573

5

F.3d 401, 407 (7th Cir. 2009); *Anderson,* 477 U.S. at 252. Instead, the opposing party must have "evidence on which the jury could reasonably find" in his or her favor. *Anderson,* 477 U.S. at 252.

### III. ANALYSIS

Jurisdiction in this case is based on the parties' diversity of citizenship. *See* 28 U.S.C. § 1332. As previously decided, Indiana substantive law governs Kedron's spoliation claim. (ECF 77 at 5–9; *see also* 28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In Indiana, a defendant is liable for negligent spoliation if a plaintiff shows that the other party alleged to have lost or suppressed the evidence owed a duty to the person bringing the spoliation claim to have preserved the material, "that the duty was breached, that [the plaintiff was] harmed by the breach, and 'that the harm resulted in damages that can be proven with reasonable specificity.'" *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1034 (7th Cir. 2005) (quoting *Thompson ex rel. Thompson v. Owensby*, 704 N.E. 2d 134, 140 (Ind. Ct. App. 1998)).

This Court already concluded that Grange had a duty to preserve, or maintain, the trailer and its components, including the rear lighting system that Kedron says was spoliated during Mr. Hyde's testing on July 23, 2016. (ECF 102 at 23). In its motion, Grange now asserts that summary judgment must be granted on the remaining elements of breach of duty, causation, and damages. The evidence of record pits the parties' experts against each other. This classic "battle of the experts" creates genuine disputes of material fact that must be decided by a jury.

### A. Breach of Duty

"Whether a particular act or omission is a breach of duty is generally a question of fact for the jury." N. *Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003). "It can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts." *Id.* In a spoliation claim, the plaintiff bears the burden of proving that the defendant breached its duty to maintain the evidence. *Thompson*, 704 N.E.2d at 140.

Grange contends that Kedron cannot meet her burden to prove that Grange breached its duty to maintain evidence because no evidence was spoliated. In support, Grange cites the reports of its experts Erik Anderson and Mr. Hyde to argue that Mr. Hyde preserved the rear-lighting system, which remains available and testable. Grange discounts the opinions of Kedron's experts as contradictory because they did not test any of the lighting components then opined that testing the lighting system was inhibited by Mr. Hyde's July 2016 inspection, but that testing could still be conducted on the lighting components.

Kedron challenges neither Grange's assertion that her experts did not test the lighting components nor the opinions that there are a variety of ways to test the lighting components. Instead, she directs the Court's attention to the affidavit of her expert, Paul Thogersen, who opined that Mr. Hyde altered evidence of the trailer's lighting system during his July 2016 inspection, which "prevented proper examination and testing." (ECF 169-2 at 2). Mr. Thogersen formed this opinion after conducting a visual inspection of the trailer on April 25, 2022, and reviewing photographs from the July

7

2016 inspection of the rear lighting system. Consistent with Mr. Hyde's own report regarding his July 2016 inspection, Mr. Thogersen found that all four of the rear-facing lights had been detached and removed from the trailer, one lamp housing was cut open, dirt and dust deposits were removed from lamp housings, and the trailer's electrical connectors were tested by attaching an exemplar light assembly to the trailer using the connectors previously attached to the Light Number 3 assembly. (ECF 169-2 at 1–2, ¶ 6; *see also* ECF 166-4 at 6–7).

According to Grange, Mr. Thogersen's affidavit cannot be credited for a couple reasons. First, Grange contends that Mr. Thogersen's deposition testimony contradicts his affidavit by discussing methods other than firsthand testing for analyzing bulb filaments for hot shock, wiring from the trailer to the bulb, and oxidation of electrical connectors. (*See* ECF 166-9 at 23, 25, and 30). From this alleged contradiction, Grange infers that Mr. Thogersen is not qualified to opine about whether the evidence was spoliated because he did not review the available evidence. Yet Mr. Thogersen reviewed photographs of the relevant lighting evidence as he states explicitly and shows implicitly by incorporating photographs in his affidavit to support his conclusions. (ECF 169-2 at 2–3). All that Grange highlights here is a question of Mr. Thogersen's credibility on whether the evidence was spoliated—a question for the jury to decide.

Second, Grange argues that Mr. Thogersen's affidavit only presents blanket, generalized, and conclusory statements that cannot create a genuine dispute of material fact. Indeed, Kedron, as the non-moving party "may not rest upon mere allegations in

8

the pleadings or upon conclusory statements in affidavits; [she] must go beyond the pleadings and support [her] contentions with proper documentary evidence." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020)). But Mr. Thogersen's affidavit is not devoid of documentary evidence. As already mentioned, he incorporated photographs that he had reviewed as support for his conclusions. (ECF 169-2 at 2–3). For instance, he used a photo to show that material was transferred to the exemplar from the connector in the trailer thereby changing the exemplar. (*Id*. at 2).

Moreover, the photographic evidence in Mr. Thogersen's affidavit could support a legitimate inference that any alteration to the lighting system during Mr. Hyde's inspection made the lights and the related components different than they were at the time of the crash. A legitimate secondary inference would then be that Mr. Hyde's testing altered evidence and prevented any determination of the lights' status at the time of the crash. As noted in the parties' statements of material facts, Mr. Thogersen and Jessica Ellis, another expert retained by Kedron, focused their conclusions on the inability for any testing to show the status of the lights specifically at the time of the crash. (*See, e.g.*, ECF 169-2 at 2 ("I have also determined that due to the inconsistency between the described condition of the lamp in the two reports by Defendants' expert, Adam Hyde, it is impossible to draw conclusions about the status of the lamp at the time of the collision." —Thogersen Affidavit); ECF 166-8 at 48 (stating that light measurements could be taken now but that they would not be reliable as to their "state at the time of the incident" —Ellis Deposition)). Grange's expert, Mr. Anderson,

concludes differently finding that Light Number 3 remains testable, specifically for hot shock, and reached his own conclusion about the status of the lights "at the time of impact." (ECF 166-2 at 15).

The record thus presents evidence creating doubt as to whether Mr. Hyde's July 2016 inspection of the rear lighting system, especially the Light Number 3 assembly, has prevented accurate and reliable testing as to the state of the lamps at the time of the crash. And that doubt must be resolved in Kedron's favor as the nonmovant. *See Anderson*, 477 U.S. at 255. There is more than a single inference that can be drawn from the facts of record. *See Sharp*, 790 N.E.2d at 466. As a result, Kedron has established a genuine dispute of material fact as to whether Grange breached its duty to preserve evidence essential to Kedron's negligence claims.

Kedron also argued that the state court's decision in her mother's case[1], finding Mr. Hyde's conduct constituted spoliation by Royal Paper and Mr. Hazeltine (ECF 35-1 at 4), created a factual issue as to whether Mr. Hyde's conduct also constituted spoliation by Grange. Having already identified a dispute of fact, the Court need not consider the effect of the state court's decision on Grange's instant motion for summary judgment. (*Cf.* ECF 77 at 18).

### B.    Proximate Causation

"An indispensable element of a negligence claim is that the act complained of must be the proximate cause of the plaintiff's injuries." *Bader v. Johnson*, 732 N.E.2d 1212,

---

[1] *Jessica Gaston v. Jackie Hazeltine & Royal Paper Stock Company, Inc.*, Wabash Superior Court, Case Number 85D01-1709-PL-000605

10

1218 (Ind. 2000). "A negligent act is the proximate cause of an injury if the injury is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated." *Id.*; *see also Flueckiger v. Englehardt*, 89 N.E.3d 1119, 1121 (Ind. Ct. App. 2017). "To be considered the proximate cause of another's injury, the negligent act must have set in motion a chain of circumstances which in natural and continuous sequence lead to the resulting injury." *Flueckiger*, 89 N.E.3d at 1121 (quotation omitted). There must be a "reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered [such that] the harm would not have occurred but for the defendant's conduct." *Topp v. Leffers*, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) (quotations omitted).

Grange contends that Kedron cannot meet her burden to show that Grange's alleged spoliation proximately caused her injury. Grange submits that Kedron's disclosed experts rendered opinions relative to Royal Paper's and Mr. Hazeltine's alleged fault in causing the crash despite any spoliation of the rear lighting system. From this, Grange concludes that Kedron cannot prove that Grange instigated a chain of events that led to her alleged harm—an inability to prove her negligence claims against Royal Paper and Mr. Hazeltine. *See Flueckiger*, 89 N.E.3d at 1121. In other words, Grange suggests that Kedron was not harmed by the alleged spoliation because her experts have presented opinion and testimonial evidence that support her arguments against Royal Paper and Mr. Hazeltine. Grange further argues that if Kedron is prospectively unable to prove her claims against Royal Paper and Mr. Hazeltine, it is her own fault because she willfully refused to take advantage of opportunities for

11

testing the lighting system and its components. Neither argument suffices for purposes of summary judgment.

As Grange accurately states, Kedron's experts have provided opinion and testimonial evidence relevant to her negligence claims against Royal Paper and Mr. Hazeltine. Ms. Ellis testified that her review of Mr. Hyde's photos from his July 2016 inspection provided "no evidence of hot shock." (ECF 166-8 at 36, 45). Ms. Ellis also testified that hot shock would be determinative of the activation state of a light at the time of impact. (*Id*. at 45). What Grange does not mention, however, is that Ms. Ellis confirmed to counsel that any hot shock evaluation of Light Number 3's bulb now would not necessarily be an indication of the state of light at the time of impact in this case, just an impact at some point in time. (*Id.*). Kedron also directs the Court's attention to Ms. Ellis's expert report in which she opines:

> From photographs taken by Mr. Hyde at his July 23, 2016[,] inspection, critical components, such as the rear lamps, of the trailer were removed and altered. The actions taken by the investigator in this inspection prevented all future analysts from reliably determining the activation state of the tail lamps at the time of the incident.

(ECF 166-7 at 12). As Kedron notes, Ms. Ellis also testified that Mr. Hyde failed to test for the luminosity level of the trailer's lights during his July 2016 inspection, and his alterations to the lights prevent any luminosity measurements now that would reliably test the luminosity at the time of the crash. (ECF 166-8 at 47–48).

Based on Ms. Ellis's report and testimony alone, a reasonable jury could find that Mr. Hyde's July 2016 inspection limited the evidence available to Kedron to prove her negligence claims against Royal Paper and Mr. Hazeltine. See *Celotex*, 477 U.S. at 322.

Yet the record also includes a similar opinion from Mr. Thogersen stating that " . . . it is impossible to draw conclusions about the status of the lamp at the time of the collision." (ECF 169-2 at 2). Mr. Thogersen also opined that Mr. Hyde's exemplar testing of the electrical connectors for Light Number 3 altered the evidence preventing "proper examination and testing." (*Id.*). Thus, Kedron has presented evidence that could lead a jury to conclude that the alleged spoliation would naturally lead to Kedron's inability to prove the state of the rear lighting system at the time of the crash, which is essential to any assessment of who or what was at fault for the crash. *See Bader*, 732 N.E.2d at 1218. But for the alleged spoliation, Kedron could have gathered additional evidence about the cause of the crash and the relative fault of Royal Paper, Mr. Hazeltine, and even Kedron's aunt who was driving the car. *See Flueckiger*, 89 N.E.3d at 1121; *Topp*, 838 N.E.2d at 1032.

Grange proffered other examples of evidence from Kedron's experts that could reasonably be viewed as helping her prove her negligence claims. Yet none of this evidence overcomes the inference from Ms. Ellis's and Mr. Thogersen's opinions and testimony that the alleged spoliation limited or otherwise prevented her from proving her negligence claims. *See Anderson*, 477 U.S. at 255. Thus, Kedron has established a genuine dispute of material fact as to the causation element of her spoliation claim.

### C. Damages

Kedron's spoliation claim against Grange is predicated on there being some type of harm to her underlying negligence claims against Royal Paper and Mr. Hazeltine. (*See* ECF 77 at 20). To succeed on her spoliation claim, Kedron must prove that the harm

13

from any alleged spoliation "resulted in damages that can be proved with reasonable specificity." *Thompson*, 704 N.E.2d at 140.

    Grange argues that it is impossible for Kedron to prove damages from the alleged spoliation of the trailer's rear lighting system with any degree of specificity. Grange contends that Royal Paper's and Mr. Hazeltine's affirmative defense to the underlying negligence claims—that Kedron's aunt as the driver of the car is at fault for the crash—precludes proof of any damages to the underlying negligence claims. According to Grange, Kedron's spoliation claim necessarily fails if the jury finds that Royal Paper and Mr. Hazeltine were 100% at fault for the crash because she would not have been harmed by any acts of spoliation. Grange also suggests that Kedron could not prove harm to her negligence claims based on the spoliation of the rear lighting system if Kedron's aunt were to be found 100% at fault for the crash because such fault need not arise from the trailer's conspicuity or the lights on the back of the trailer. Lastly, Grange maintains that any apportionment of guilt to Kedron's aunt implicitly means the jury found that Kedron's aunt's conduct required the apportionment. Based on these possible outcomes, Grange concludes that Kedron cannot prove damages to her ability to prove her negligence claims.

    Yet as this Court already found, damages from spoliation can be proven by showing damages based on both Kedron's "prospective inability to prove [her] claims against the other defendants [or ] the cost of retaining experts or conducting discovery needed to provide alternative proof of the alleged defect." (ECF 77 at 20 (quoting

14

*Thompson*, 704 N.E.2d at 140 n.7[2])). Kedron states that the spoliation damages she seeks "are directly tied to her impaired ability to substantiate her claims and the additional expenses required to mitigate the impact of lost evidence." (ECF 167 at 19). Grange concedes that Kedron's litigation expenses arising from the alleged spoliation would be a category of spoliation damages that could be determined with reasonable specificity. Yet Grange maintains its argument that Kedron cannot prove damages related to her prospective inability to prove her negligence claims on grounds that such damages are speculative and require guesswork to calculate. (ECF 173 at 12).

"Proving damages in a third-party spoliation claim becomes highly speculative and involves a lawsuit in which the issue is the outcome of another hypothetical lawsuit." *Glotzbach v. Froman*, 854 N.E.2d 337, 341 (Ind. 2006). A jury deciding such a spoliation claim would have to determine the outcome of the other hypothetical lawsuit and "what the damages would have been had the [allegedly spoliated] evidence been produced and what the collectability [sic] of these damages would have been." *Id.* Such work by a jury "could be properly described as guesswork." *Id.* (quotation omitted). *Glotzbach* appropriately reflects policy concerns about spoliation claims given the challenges of ascertaining damages. Yet *Glotzbach* does not hold that spoliation damages for prospective inability to prove underlying claims are impossible to calculate or always speculative.

---

[2] In discussing the causation element of the spoliation claim, Grange interpreted *Thompson* as rejecting the view that spoliation damages could be based on a plaintiff's prospective inability to prove other claims. (ECF 166 at 9). In other words, Grange suggested that Kedron's spoliation damages could not be based on her prospective inability to prove her negligence claims against Royal Paper and Mr. Hazeltine. Grange misinterprets *Thompson* on this point as reflected in the plain language of *Thompson*.

15

In *Glotzbach*, the court faced a spoliation claim raised in the context of a workers' compensation situation. The court found that permitting third-party claims of spoliation by an employer "would open the door to satellite litigation against the employer that the [Workers' Compensation Act] is designed to foreclose." *Id.* Acknowledging the challenges of calculating spoliation damages, specifically in the context of policies related to workers' compensation, the court dismissed the spoliation claim. *Id.* at 342. Here, there are no competing policies to undercut Kedron's spoliation claim. Additionally, Kedron's negligence claims against Royal Paper and Mr. Hazeltine are not hypothetical. They are integrated into this single case and would be presented to the jury simultaneously.

As Grange states, the jury will have to apportion fault between Royal Paper/Mr. Hazeltine and Kedron's aunt in resolving the negligence claims. To determine any damages on the spoliation claim, the jury would then have to determine how the alleged spoliation of the trailer's rear lighting system, especially Light Number 3, affected its determination of fault. Evidence of whether all the trailer's rear-facing lights were illuminated at the time of the crash, and how brightly each was lit, would be relevant to the proportion of Royal Paper's and Mr. Hazeltine's fault (if any) in causing the crash. As already discussed, Kedron has produced evidence bringing into question whether the activation state and luminosity of Light Number 3 at the time of the crash can be determined after the alleged spoliation by Mr. Hyde during his July 2016

16

inspection where the light's assembly was altered. With that evidence[3], there remains a genuine dispute of material fact as to the effect of the alleged spoliation of the rear lighting system on, among other issues, the apportionment of fault to be determined by the jury in resolving Kedron's negligence claims. Therefore, Grange is not entitled to judgment as a matter of law on the element of spoliation damages.

IV. **CONCLUSION**

For the reasons discussed above, Grange's motion for summary judgment is **DENIED**. (ECF 164).

SO ORDERED on September 10, 2025.

                                                /s/*Cristal C. Brisco*
                                                CRISTAL C. BRISCO, JUDGE
                                                UNITED STATES DISTRICT COURT

---

[3] Grange criticizes Kedron for failing to suggest any jury instructions or interrogatories to show how the jury could functionally determine spoliation damages. (ECF 173 at 11). Grange implies that jury instructions and interrogatories would be evidence sufficient to demonstrate a genuine dispute of material fact regarding the calculation of spoliation damages with reasonable specificity. *See Thompson*, 704 N.E.2d at 140. Yet Grange does not explain what type of interrogatories it is referencing or provide any authority on the effect of jury instructions and interrogatories in assessing a motion for summary judgment. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).